## BOOKMAN v. SEABOARD AIR LINE RY.

(Circuit Court of Appeals, Fourth Circuit. March 12, 1907.)

No. 670.

1. MASTER AND SERVANT—INJURIES TO SERVANT—RAILROADS.

Where intestate, a railroad employé, was going in the direction of his employer's terminal yards at the time the accident occurred, and his duties were such that he was required to be on the yards and go to and from the same, his employer owed him the duty to exercise reasonable care for his safety while he was thus engaged.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 212, 218.]

2. SAME—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

Rev. St. Fla. 1892, § 2345, provides that no person shall recover damage from a railroad company for injury to himself or his property where the same is done by his consent or is caused by his own negligence; but if the complainant and the agents of the company are both at fault, the former may recover, the damages to be diminished by the jury in proportion to the amount of default attributable to complainant. *Held* that, while such section practically eliminates the doctrine of contributory negligence, it does not entitle a complainant to recover without proof that the particular negligence of which defendant was at the time guilty was the proximate cause of the injury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 795–800.]

3. RAILROADS—INJURIES TO PEDESTRIANS—PRESUMPTIONS.

Where just prior to intestate's injury by being struck by a railroad train he was walking alongside the track at a place where he could not have been injured, the engineer and those in charge of the train were entitled to assume that he would not leave such place and go upon the track in front of the train.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 1279, 1280.]

4. SAME—NEGLIGENCE—PROXIMATE CAUSE.

Where intestate stepped onto a railroad track in front of a train and was killed, and the engineer did not see him at all, the fact that the railroad company was negligent in failing to equip the engine with air brakes was not the proximate cause of the accident.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1320.]

In Error to the Circuit Court of the United States for the District of South Carolina, at Columbia.

H. P. Green, for plaintiff in error.

John J. McMahan (Lyles & McMahan, on the brief), for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and WADDILL, District Judge.

PRITCHARD, Circuit Judge. This is an action brought by Mary A. Bookman, plaintiff, widow of A. G. Bookman, deceased, against the Seaboard Air Line Railway, defendant, for damages for the alleged negligent killing of the said A. G. Bookman while on duty on the yards controlled by the Terminal Company at Jacksonville, Fla., on the 16th of January, 1904, by the engine of the defendant company. The action

was brought in Lexington county, S. C., and removed to the Circuit Court of the United States at Columbia, that state. This action was instituted under the provisions of the Florida statute, which are as follows:

"Sec. 2342. Whenever the death of any person in this state, shall be caused by the wrongful act, negligence, carelessness or default of any individual or individuals, or by the wrongful act, negligence, carelessness or default of any corporation, or by the wrongful act, carelessness, negligence or default of any agent of any corporation acting in his capacity of agent of such corporation, and the act, negligence, carelessness or default is such as would, if death had not ensued, have entitled the party injured thereby to maintain an action for damages in respect thereof, then and in every such case the person or persons who, or corporation which would have been liable in damage, if death had not ensued shall be liable to an action for damages notwithstanding the death shall have been caused under circumstances as would make it in law amount to a felony.

"Sec. 2343. Every such action shall be brought by and in the names of the widow or husband, as the case may be, and when there is neither widow nor husband surviving the deceased, then the minor child or children may maintain an action; and when there is neither husband nor minor child or children, then the action may be maintained by any person or persons dependent on such person killed for support; and when there is neither of the above classes of persons to sue, then the action may be maintained by the executor or administrator, as the case may be of the person so killed; and in every such action the jury shall give such damages as the party or parties entitled to sue may have sustained by reason of the death of the party killed." etc.

Chapter 4071, p. 113, of the Laws of Florida, approved May 4, 1891, reads:

"Section 1. A railroad company shall be liable for any damages done to persons, stock or other property, by the running of the locomotive or cars or other machinery of such company or for damages done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company."

The plaintiff's intestate had been employed for a short time by the Atlantic Coast Line Railroad Company in the performance of duties which required him to go more or less on the terminal yards. Just prior to the time when he was injured he was walking alongside the track of the main line, and suddenly stepped on the track a few feet in front of the engine, and was immediately run over and killed.

In determining the merits of this controversy, it is necessary to decide whether the death of the plaintiff's intestate was due to the negligence of the defendant company. The intestate of plaintiff in error was going in the direction of the terminal yards at the time the accident occurred, being on the main line about 100 yards from the place where his employment required his presence. His duties were such that he was required to be on the yards and to go to and from the same, and while thus engaged the defendant company owed him reasonable care. In order to enable the plaintiff to recover in this action, it is necessary to show by competent evidence that the defendant company carelessly and negligently failed to do that which would have prevented the injury.

Section 2345 of the Revised Statutes of Florida (1892) is a part of the chapter on negligence, and confers a right of action in case of death resulting from the negligence or wrongful act of another, and was relied upon by plaintiff in error, and the court below ruled that the case at bar was governed by this provision of the Florida statute. The section in question is as follows:

"No person shall recover damage from a railroad company for injury to himself, or his property where the same is done by his consent or is caused by his own negligence. If the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished by the jury trying the case in proportion to the amount of default attributable to him."

This section practically eliminates the doctrine of contributory negligence; nevertheless, in order to enable the plaintiff in error to recover, it must be made to appear that the particular negligence of which the defendant was at the time guilty was the proximate cause of the injury.

In the case of Railroad Co. v. Williams, 37 Fla. 406, 20 South. 558, among other things, the court held:

"Though the defendant may be guilty of some negligence at the time of the accident, yet, in order to justify a recovery, it must be made to appear that the particular negligence of which it was at the time guilty was the proximate cause of the plaintiff's injury."

Under this decision there can be no apportionment of negligence in a case where the negligence of the defendant is not directly and proximately the cause of the result, or if, as in this case, plaintiff's negligence was the proximate cause of the result. Section 2345 obviously means that, in all cases where both plaintiff and defendant are at fault, the plaintiff shall be entitled to recover, but the damages to be awarded by the jury shall be reduced in proportion to the negligence of the plaintiff. However, this statute cannot be construed to mean that the plaintiff is entitled to recover in cases wherein the proof shows that the defendant could not by the exercise of due care have prevented the injury. The evidence in this case shows conclusively that just before plaintiff's intestate was injured he was walking alongside the track at a place where he could not have been injured by the engine of the defendant, and the engineer and those in charge of the train had a right to assume that he would not leave a place of safety and place himself in a position of imminent peril.

F. O. Blocker, foreman of the Atlantic Coast Line Railroad Company's switch engine, testified that he was near the scene of the accident. He was asked the question if he saw Bookman step on the track in front of the engine; to which he answered:

"I saw him just as he stepped in front of the engine; it was all done in the twinkling of an eye; I never did know until some one up there passed back and said that it was Mr. Bookman; that is all I knew."

He also testified that the deceased was about five or six feet in front of the engine when he stepped on the track, and that the engine was running about five or six miles an hour. There were a number of other witnesses who testified for the plaintiff and defendant. One witness

for the plaintiff, a colored switchman, testified that the engine was running about 15 or 20 miles an hour, but there was no evidence which tended to show that the engine was running at a dangerous rate of speed, nor that the life of plaintiff's intestate could have been saved under the circumstances, had the engine been running at a less rate of speed. It was also shown that the bell was ringing, and the engineer stopped the train the moment that he was informed that the deceased was on the track. If the engineer had seen the plaintiff's intestate walking on the track any considerable distance from the engine, he would have been justified in assuming that he would leave the track before the engine reached him. This is a reasonable and just rule, and in the absence of which it would be impossible to operate trains without being continuously compelled to stop whenever a person should be observed walking on the track.

The court which tried this case below, in its charge to the jury, among other things, said:

"Now, what is the proof as to the defendant company? The testimony upon which the plaintiff relies, the only testimony, is that of a colored witness, a switchman, who says that the engine was running at the rate of 15 to 20 miles an hour. There is no proof that that was a dangerous rate of speed; 15 to 20 miles an hour is not considered usually a dangerous rate of speed; it may or may not be, according to circumstances. But let us assume that 15 to 20 miles an hour was a dangerous speed (although there is no proof of it); the court would not be justified in imputing negligence, perhaps, if it assumed that that was a dangerous rate of speed. It was not in the circumstances proved, there was no reason that I can see, why the engines could not move around there with as much speed as it was proper; but it appears that for their own purposes the yard-master there gave instructions not to move at a greater rate than about six miles an hour, and all the witnesses for the defendant testify that the speed was not greater than six miles an hour. Only one witness testifies that it was greater, and that is a colored switchman. The other witness for the plaintiff, the engineer, testifies that he was running only about six miles an hour, so the overwhelming preponderance of testimony is that the engine was not running at a greater rate of speed than six miles an hour. Testimony is that the engine was old, ramshackle, in a very impaired condition. If it was in as bad condition as plaintiff's witnesses or witness attempts to show, the wonder is that it was running six miles an hour. But there is something more; it had stopped up at the semaphore, at the block, and had just started and gone about a hundred yards, according to the testimony, as the court recalls it, so that an engine of that kind, operating in the railroad yards, ramshackle, impaired, it is extremely doubtful whether it was possible for it to get up a speed of 20 miles in the distance of a hundred yards. So all that testimony, and all the inferences that would naturally and reasonably be drawn from the testimony, lead me to conclude that the engine was not running at a greater speed than six or seven miles an hour.

"Then, what else? The same witness who testified as to the speed has testified that the bell did not ring. I was rather favorably impressed by that witness, and if the balances are against any one man I think that the chances are that he is to be believed as against any other one man, colored though he was; but all that he could say was that he did not hear it. He could not say that it did not ring; he might truthfully say that he did not hear it. I conceive that he told the truth; he probably did not hear it. The ringing of a bell on yard engines moving around is a thing of such constant occurrence that it might take place without a man's attention being fixed upon it; but the other witness for the plaintiff, the engineer, Titus, swore that it did ring. The painter, a man who was not employed by the company, a man who was some distance off, testified that he heard it ring. A man down

at the shop testified he heard it. Blocker testified that he heard it. So how can I conclude that the bell did not ring when five or six witnesses, as credible and likely to know as the switchman, testified that they heard the bell ring, and the only testimony, on the other side is that one man who did not hear it? I think that the overwhelming preponderance of the testimony is that the bell was ringing. If it was a case where the testimony would be equally balanced, or where reasonable men might reasonably draw different conclusions from it, it would be my duty to leave it to the jury, I would say that it would be my pleasure to do so; I don't like to decide questions which I can avoid deciding. Questions as to the credibility of witnesses, and on questions of fact, as a rule, I prefer to take the judgment of the jury; but where a case is so plain that I would be bound, if the jury should find the other way, to set aside their verdict, it is my duty to express my own opinion. The only testimony tending to show negligence on the part of this defendant company is that that engine was in bad condition, and that it was not equipped with air brakes. If there was any ground to conclude that the failure to have a proper equipment contributed to this result, it would be my duty to leave it to the jury—that is, contributed as a proximate cause—but under the proof here, the fact that there were no air brakes could not in any view be considered as the proximate cause of this injury. The engineer did not see the man at all, and therefore he could not have put on his air brakes. It follows that the absence of air brakes did not contribute to the result, and, not being a proximate cause, neglect in that respect will not be considered."

The foregoing statement makes it perfectly clear that in no view of the case would the plaintiff be entitled to recover in this action. There is nothing in the evidence to show that the defendant in error was in any wise responsible for the death of plaintiff's intestate. This would be true under any rule of construction, and it is especially true under the statute which was invoked by plaintiff in error in the trial below.

This case was tried with great care by the learned judge below, and every opportunity was afforded the plaintiff in error to present her case in the strongest possible light, and, after carefully considering the different assignments of error, we are of opinion that the same are without merit. Therefore the judgment of the Circuit Court is affirmed.