'(June 4, 1912.)'

## JOSEPH NEIL, Respondent, v. IDAHO & WASHINGTON NORTHERN RAILROAD, a Corporation, Appellant.

[125 Pac. 331.]

RAILROADS — EMPLOYEES' LIABILITY LAW OF CONGRESS — INTERSTATE COMMERCE—PERSONAL INJURIES—EMPLOYEE—CONDUCTOR ON TRACK —ENGINE —SWITCHING-YARDS —PRESUMPTION —NEGLIGENCE — CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY OF INSTRUCTIONS.

(Syllabus by SULLIVAN, J.)

1. Sec. 1 of an act of Congress relating to the liability of common carriers by railroad to their employees in certain cases (Chap. 149, 35 Stat. L. 65, Supp. 1909, Fed. Stats. Ann., p. 584), provides that a railroad company shall be liable in damages to any person suffering injury, etc., resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment.

2. It is provided by sec. 4 of said act that the employee shall not be held to assume the risk of his employment in any case where the violation by such carrier of any statute enacted for the safety of the employees contributed to the death or injury of such employees; otherwise, under said act, the defense of assumption of risk remains as at the common law.

3. Said act restricts the defense of contributory negligence where there is negligence on the part of the company, and restricts the defense of assumption of risk where the company has violated any statutes enacted for the safety of the employee.

4. Said act limits a recovery to a case of an employee suffering an injury while he is employed by the carrier in interstate commerce.

5. *Held*, under the facts of this case that the respondent when he was injured was engaged in interstate commerce.

6. Where a railroad conductor, forty years of age, being in the possession of all of his faculties, who has had large experience in railroad business as a brakeman, switchman, switch-yard foreman, yard-master and conductor, whose train is made up, consisting of about twenty freight-cars and a caboose, and who goes to the engine attached to his train and delivers to his engineer his clearance card,

and steps across the space between the tracks upon the "scale track" and walks leisurely back toward the caboose on his train, and the switch engine that made up his train and left it standing on the "passing track" proceeds down in the yards to get four cars loaded with coal and returns up the scale track with said cars, with the bell ringing so that it could be heard at least a thousand feet, and the engine laboring up a one per cent grade and running at from eight to twelve miles an hour, and the exhaust of steam and noise of the engine could be heard for a quarter of a mile, and the fireman on the switch engine had seen the respondent walking on the track when he was about 500 feet away, and respondent is not noticed thereafter by the fireman or engineer until he is struck by the engine, *held,* that the railroad is not guilty of negligence.

7.   A person in charge of a switch engine in a railroad yard, used for the purpose of moving cars and making up trains, has a right to act on the belief or presumption that the various employees in the yard, familiar with the continuously recurring movements of the cars, will take reasonable precaution against the approach of the cars, particularly where the cars are moving so slowly that ordinary attention on the part of the employee would enable him to avoid injury.

8.   When an engineer sees an adult, apparently in the full possession of his faculties, walking on the track ahead of his engine, he has a right to presume that such person will get off the track before the train reaches him.

9.   *Held,* under the facts of this case that ordinary care on the part of the engineer and fireman did not require them to anticipate that respondent would not step off the track, and such care did not require them to stop the train and send someone forward to remove respondent from the track.

10.   Under the facts of this case, and in the light of the presumption that one in the possession of his faculties, walking on a railroad track, will step off the track in time to avoid injury, the engineer and fireman on the switch engine had reasonable grounds to believe that the respondent would step off the track before the engine struck him.

11.   Under the facts of this case, the engineer and fireman were not bound to anticipate and provide against extraordinary, unusual and improbable conditions which would involve inattention on the part of respondent, and their duty to him began only when they had good reason to suppose that he was unconsciously, or otherwise, in peril.

12.   The engineer and fireman on a moving train, with bell ringing and the exhaust of steam and the train making considerable noise, may presume when they observe a railroad conductor walking

on the track that he will heed the ringing of the bell and the noise of the train and step off the track in time to save himself from injury, unless something indicates the contrary.

13. Every railroad employee about a switching-yard must be taken to know and understand the hazards of the situation and that safety requires the utmost vigilance.

14. *Held,* that the question in this case is not what the engineer might have done, but what his duty to the respondent conductor required him to do in view of the latter's apparent duty and ability to protect himself.

15. When an engineer observes a man who possesses his faculties walking upon the railroad track and in no immediate danger, the obligation of care and effort on his part arises only at the moment when the person on the track is seen or believed to be in a perilous situation.

16. Under said act of Congress, contributory negligence on the part of the plaintiff is not a bar to recovery, but the damages must be diminished by the jury in proportion to the amount of negligence attributable to such employee.

17. *Held,* that the doctrine of the "last clear chance" has no application to this case.

18. *Held,* that the verdict of $35,000 is excessive, even if negligence on the part of the railroad company had been shown.

19. *Held,* that it was error to give certain instructions; also that it was error to refuse to give certain proposed instructions.

STEWART, C. J., dissents in part; AILSHIE, J., concurs in part.

APPEAL from the District Court of the Eighth Judicial District for Kootenai County. Hon. John M. Flynn, Judge.

Action to recover from a railroad company for personal injuries. Judgment for plaintiff. *Reversed.*

Chas. L. Heitman, and John P. Gray, for Appellant.

The servants of the appellant in charge of switch engine 22, with that engine moving slowly as it was, were not bound to assume that an employee familiar as Neil was with the manner of doing business there, would be indifferent to the going and coming of cars. They had a right to act upon the belief that Neil in the yards would take reasonable precautions against the approach of switch engines, particularly with bell ringing, and had a right to assume that he would step off

the track before the cars reached him.   (*Aerkfetz v. Humphreys*, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. ed. 758.)

"When an engineer sees an adult on the track ahead of him, he ordinarily has a right to presume that he will get off the track before the train reaches him." (*Anderson v. Great Northern Ry. Co.*, 15 Ida. 513, 99 Pac. 91; *Smith v. Atlanta & C. R. R. Co.*, 130 N. C. 344, 42 S. E. 139; *Pennsylvania Co. v. Myers*, 136 Ind. 242, 36 N. E. 32; *Louisville & N. R. Co. v. Cronbach*, 12 Ind. App. 666, 41 N. E. 15; *Campbell v. Kansas City etc. R. Co.*, 55 Kan. 536, 40 Pac. 997; *Cincinnati R. R. Co. v. Long, Admr.*, 112 Ind. 166, 13 N. E. 663; *Carrier v. Missouri Pacific Ry. Co.*, 175 Mo. 470, 74 S. W. 1002.)

The railroad company owed to Neil or to any other of its employees who might be upon its tracks in its switching-yards the duty only to exercise ordinary care. (*Hogan v. Chicago etc. R. R. Co.*, 59 Wis. 139, 17 N. W. 632; *Norfolk & W. Ry. Co. v. Gesswine*, 144 Fed. 56, 75 C. C. A. 214; *Copp v. Maine Cent. R. Co.*, 100 Me. 568, 62 Atl. 735; *Everett v. Los Angeles etc. R. Co.*, 115 Cal. 105, 43 Pac. 207, 46 Pac. 889, 34 L. R. A. 350; *Bookman v. Seaboard Air-Line Ry. Co.*, 152 Fed. 686, 81 C. C. A. 612; *Erickson v. Railroad Co.*, 41 Minn. 500, 43 N. W. 332, 5 L. R. A. 786; *Norfolk & Western R. Co. v. Dean*, 107 Va. 505, 59 S. E. 389; *Teel v. Ohio River R. Co.*, 49 W. Va. 85, 38 S. E. 518; *Raines v. Chesapeake & O. Ry. Co.*, 39 W. Va. 50, 19 S. E. 565, 24 L. R. A. 226; *Norwood v. Raleigh etc. Ry. Co.*, 111 N. C. 236, 16 S. E. 4; *Louisville & N. R. Co. v. Black*, 89 Ala. 313, 8 South. 246; *Nichols v. Louisville & N. R. Co.* (Ky.), 6 S. W. 339; *Birmingham Ry. etc. Co. v. Bowers*, 110 Ala. 328, 20 South. 345; *Starboard v. Detroit etc. Ry. Co.*, 122 Mich. 23, 80 N. W. 879; *Bouwmeester v. Grand Rapids etc. R. Co.*, 67 Mich. 87, 34 N. W. 414; *Exum v. Atlantic Coast Line R. Co.*, 154 N. C. 408, 70 S. E. 845, 33 L. R. A., N. S., 169; *Hebert v. Louisiana etc. R. Co.*, 104 La. 483, 29 South. 239; *Smalley v. Southern Ry. Co.*, 57 S. C. 243, 35 S. E. 489; *Waldron v. Boston etc. R. Co.*, 71 N. H. 362, 52 Atl. 443; *Atl. Coast Line R. Co. v. Miller*, 53 Fla. 246, 44 South. 247; Ray's Negligence of Imposed Duties, p. 134;

Elliott, Railroads, sec. 1258; 33 Cyc. 800; Wharton, Negligence, sec. 389a.)

Neil assumed the risks, the danger from which brought about his injury. (*O'Neil v. Pittsburg etc. Ry. Co.*, 130 Fed. 204; *Goodes v. Boston & A. R. Co.*, 162 Mass. 287, 38 N. E. 500; *Appel v. Buffalo, N. Y. & P. R. Co.*, 111 N. Y. 550, 19 N. E. 93; *Olsen v. Andrews*, 168 Mass. 261, 47 N. E. 90.)

There can be no recovery under the pretended doctrine of last clear chance, or on any other theory, unless there was wilfulness on the part of the employees of the company and the injury inflicted as a result of such wilful negligence. (*Ullrich v. Cleveland, C. C. & S. L. R. Co.*, 151 Ind. 358, 51 N. E. 95.)

Where one on a railroad track is injured, and both he and the railroad company are negligent up to the time of the injury, the negligence of the railroad is not the proximate cause of the injury, and there can be no recovery. (*Exum v. Atl. Coast Line R. Co.*, 154 N. C. 408, 70 S. E. 845, 33 L. R. A., N. S., 169; *Norwood v. Raleigh etc. Ry Co.*, 111 N. C. 36, 16 S. E. 4.)

The verdict is excessive, and shows that it was rendered as a result of passion and prejudice and without deliberation. (*Markey v. La. & M. R. R. Co.*, 185 Mo. 348, 84 S. W. 61; *Waldhier etc. v. Hannibal etc. R. Co.*, 87 Mo. 37; *Chicago & N. W. Ry. Co. v. Jackson*, 55 Ill. 492, 8 Am. Rep. 661.)

The act of 1908 is not applicable to the facts in this case, for the reason that neither the plaintiff nor defendant was engaged in interstate commerce within the meaning of the act at the time of the happening of the accident. (*Howard v. Illinois Central*, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. ed. 297; *Van Brimmer v. Texas & P. Ry. Co.*, 190 Fed. 394; *St. Louis, I. M. & S. Ry. Co. v. Conley*, 187 Fed. 949.)

Elder & Elder, for Respondent.

The jury was clearly justified in finding that one or both of the employees in charge of the engine in question did see the plaintiff upon the track in a place of danger in ample

time to have avoided the injury by the exercise of reasonable and ordinary care, and that they failed to do so or to make any attempt to do so until after they had run him down. (2 Bailey, Personal Injuries, 2d ed., sec. 504; *Pilmer v. Boise Traction Co., Ltd.*, 14 Ida. 327, 125 Am. St. 161, 94 Pac. 432, 15 L. R. A., N. S., 254; *Anderson v. Great Northern Ry. Co.*, 15 Ida. 513, 99 Pac. 91; *Neary v. Northern Pacific Ry. Co.*, 37 Mont. 461, 97 Pac. 944, 19 L. R. A., N. S., 446; *Schulz v. C. M. & St. P. R. Co.*, 57 Minn. 271, 59 N. W. 192; *Chamberlain v. Missouri Pac. Ry. Co.*, 133 Mo. 587, 33 S. W. 437, 34 S. W. 842.)

We call attention to a few decisions which strongly tend to support this verdict as just and reasonable, though possibly generous. (*Union Pac. Ry. Co. v. Conolly*, 77 Neb. 254, 109 N. W. 368; *Hall v. Chicago B. & Q. R. Co.*, 46 Minn. 439, 49 N. W. 239; *Clay v. Chicago, M. & St. P. Ry. Co.*, 104 Minn. 1, 115 N. W. 949.)

A servant does not assume the risk arising from the negligence of the master, or from the negligence of a servant of the master for whose negligent conduct the master is responsible. The defense of assumption of risk in an action based upon the last clear chance doctrine of negligence can find no place for serious consideration, as the two doctrines cannot under any conceivable situation exist together. (Labatt, Master and Servant, secs. 270, 273; *Dale v. Colfax Cons. Coal Co.*, 131 Iowa, 67, 107 N. W. 1096; *Schulz v. Chicago, M. & St. P. Ry. Co.*, 57 Minn. 271, 59 N. W. 192; *Sprague v. Wisconsin Cent. Ry. Co.*, 104 Minn. 58, 116 N. W. 104; *Whitehead v. Wisconsin Cent. Ry. Co.*, 103 Minn. 13, 114 N. W. 254, 467; *Texas & N. O. Ry. Co. v. Kelly*, 34 Tex. Civ. App. 21, 80 S. W. 1073; *Ehrman v. Brooklyn City Ry.*, 14 N. Y. Supp. 336; *Morhard v. Richmond etc. Ry. Co.*, 111 App. Div. 353, 98 N. Y. Supp. 124; *Illinois Cent. Ry. Co v. Souders*, 79 Ill. App. 41; *Huggard v. Glucose S. Ry. Co.*, 132 Iowa, 724, 109 N. W. 475; *Smith v. Whittier*, 95 Cal. 279, 30 Pac. 529; *Retan v. Lake Shore & M. S. Ry. Co.*, 94 Mich. 146, 53 N. W. 1904; *Solen v. Virginia & T. R. R.*, 13 Nev. 106.)

The plaintiff is shown to have been engaged in interstate commerce at the time of the happening of the accident. (Doherty, Liability of Railroads to Interstate Employees, sec. 17.)

SULLIVAN, J.—This action was brought under an act of Congress relating to the liability of common carriers by railroad, to their employees in certain cases (see Supp. 1909, Fed. Stats. Ann., p. 584), to recover for damages sustained by the plaintiff for personal injuries alleged to have been received by him on account of the careless and negligent operation of a switch engine hauling four loaded cars of coal in the switch-yards of the company at Spirit Lake, in the state of Idaho, on the morning of October 4, 1910, whereby plaintiff was so seriously injured as to necessitate the amputation of one leg just above the knee and the other just above the ankle.

The railroad company defended on the ground that the accident occurred wholly on account of the carelessness and negligence of the respondent. The action was tried by the court with a jury and resulted in a verdict and judgment in favor of respondent for $35,000. A motion for a new trial was made and overruled by the court. The appeal is taken both from the judgment and the order denying a new trial. Errors are assigned in regard to the admission and rejection of certain testimony, the insufficiency of the evidence to support the verdict and the giving and refusing to give certain instructions.

It appears from the record that the appellant was a freight conductor about forty years of age and had been engaged during nearly all of his adult life in railroading. He had been, prior to his injury, brakeman, switchman, yard-foreman, yardmaster and conductor, and since the 14th of July, 1896, had been continuously engaged in train service and in railroad yards. He commenced work for the appellant company September 22, 1909, as a freight brakeman, and in March, 1910, was promoted to freight conductor and continued in that capacity until the time of his injury.

At the time of the accident respondent was working as conductor on freight train No. 54, a train running between Spirit Lake, Idaho, and Metalline Falls, Washington. On the morning of the accident his train had been made up in the yards upon what is called the "passing track" by switch engine No. 22, that being the engine which afterward struck the respondent and caused the injury. At the time of the accident, freight train No. 54, of which respondent was conductor, was standing on the "passing track" and was being inspected by the train inspector, whose duty it was to make a complete examination of the train in order to see that everything was in perfect order before it was permitted to depart. The main line track runs in a southeasterly and northwesterly direction. Just north of it is the "passing track" upon which train No. 54 had been made up and was being inspected at the time of the accident, and north of that is the "scale track," so called because weighing scales were connected with it. Said "scale track" was used as one of the switch tracks in said yards. Train No. 54 was made up to leave in a westerly direction. Just prior to the injury, the respondent had gone to the engine on train No. 54 and there talked to his engineer for a short time and delivered him his clearance card and turned and started back toward the rear of his train, and in doing so went over to the "scale track," some ten or twelve feet from the "passing track," and walked easterly on said track. It appears that said switch engine No. 22 had passed down the "scale track" three or four minutes before the accident occurred, and was hitched to four cars of coal, for the purpose of switching the same up to the coal chute. The railroad track through the yard had a grade of one per cent, rising in an easterly direction, and said engine No. 22 with the four cars of coal attached was going upgrade when it struck respondent.

Respondent testified that he was walking along the scale track so that he could better examine his train, and was stooping over looking at the brake-rods and brakes to see if they were all in good order. It appears that there was a space of about ten feet between the track on which said train

No. 54 was standing and the "scale track," and that respondent could have walked on that space had he desired to do so. But he testified that it did not require him to stoop quite so low to look under his train if he walked on the scale track as it would had he walked on the space between the two tracks. He also testified that when he finished talking with his engineer he stepped right over on the "scale track" and continued to walk down the "scale track" until he was struck by engine No. 22; that as he stepped upon the track he kind of glanced over his shoulder casually to see if anything was coming. He saw nothing at all and thereafter did not look behind him; that it was a calm, quiet morning and that an engine would have to use steam pulling four cars of coal up said grade and would necessarily make considerable noise. It also appears that a large automatic bell on said engine was ringing from the time the train started with said coal-cars up said grade until after respondent was struck, and that said bell could be heard for more than 1,000 feet; that from the point where the engine was hitched to said coal-cars to where the respondent was struck by the engine was a distance of five or six hundred feet, and there was a slight curve to the left in the track as it extended easterly across said yards. The fireman who sat on the left side of the engine saw the respondent walking on said track when the engine was about 500 feet from him, and testified that he supposed, of course, he would get off the track when the engine came near him. The engineer testified that he did not see him on the track at all. This was evidently because of the curve in the track. Evidently the attention of the fireman was attracted to his other duties and he paid no more attention to the conductor, the respondent, and he did not see him again until after he was struck by the engine.

It further appears that the train was running from eight to twelve miles an hour and it is not claimed by the respondent that that speed was excessive. There is very little conflict in the evidence as to the manner in which the accident occurred. Respondent testified that he was making an inspection which was required of him by the rules of the company.

The evidence on behalf of the appellant tended to show that he was simply walking down the track smoking a pipe, and that he had no duty whatever to perform in the way of inspecting the train, as the train at that terminal point was inspected by an inspector appointed for that duty. There is no dispute but that the switch engine was laboring and, as the witnesses testified, was "working steam" and necessarily making considerable noise. The fact that the automatic bell was ringing was testified to by the fireman, engineer and brakeman on engine No. 22, and by the brakeman and engineer on train No. 54, and by the car inspector. The engineer on engine No. 22 testified that where the engine hooked on coal-cars was twelve or fifteen car-lengths of forty feet each from the engine on train No. 54, and that from the time engine No. 22 passed down the scale track to hook on the coal-cars until it came back was not over three or four minutes, and that he set the automatic bell ringing on his engine and that it continued to ring until he shut it off after the respondent was struck; that said scale track was used particularly for switching cars, and had been used by him constantly every day for a year and a half, and that fact was generally known to all railroad employees. He also testified that engineers, when they see a person walking ahead on the track, pay no attention to him if he is a railroad employee; he is expected to get off the track, and that with the engine making as much noise as it was going up the grade, if he saw a person on the track eight or ten car-lengths ahead he would expect him to get off the track; that in the yards employees are constantly walking ahead of the trains; that he did not see the respondent on the track prior to the time of the accident; that when the fireman gave him the signal to stop his engine, he stopped it as quickly as possible in a little over the length of the engine.

The fireman of engine No. 22 had been working as fireman on appellant's road for a little over two years. He testified that after they hooked on to the coal-cars the bell was ringing all the time until after the engine stopped when Neil, the respondent was hurt; that the bell was being run by air and

could be heard distinctly; that the engine was laboring hard and was making a good deal of noise; that he was on the left side next to the "passing track"; that he saw Neil, the respondent, on the "scale track" while his engine was going toward the depot drawing the coal-cars; that the respondent was walking up the "scale track" with his back toward engine No. 22; at that time respondent was about twelve car-lengths down the "scale track," approximately 500 feet; he glanced back toward the rear of the coal-cars for any signals that might come from the brakeman there; that he did not pay any more attention to the respondent, didn't think any more about him; that he had to watch both ways on the switch engine and that he supposed respondent would get off the track; that the bell was ringing and the engine laboring until Neil was struck, and that he (witness) did not see respondent again from the time he saw him about 500 feet away until after the accident. Witness testified that he gave the engineer on No. 22 the signal to stop; that he received it from Hennessy, the brakeman on respondent's train; that Hennessy was standing by the caboose about six or seven car-lengths away; that he gave one signal which witness at first interpreted for setting the air on respondent's train to test the brakes, but thereupon Hennessy gave what is called a "wash-out" signal, and witness then notified the engineer on No. 22 to stop the train, which he did as quickly as possible.

The respondent testified that it was his duty to inspect his train, and that he was doing that at the time he was struck, and in order to show that it was his duty, he introduced in evidence the railroad company's rule No. 903, which is as follows:

"903. Before leaving initial points, see that their trains are provided with proper tools and sufficient supplies of all kinds. Know that the cars in their trains have been inspected and that the brakes are in proper working order. Compare time with their enginemen before starting on run, and with their brakemen, flagmen and baggagemen as soon thereafter as is practicable. Show all train orders to brakemen."

That rule, as I construe it, does not require the conductor to inspect the train at initial points, and Spirit Lake was an initial point on said road where the road kept a train inspector.

The train inspector, whose name was Baum, testified that he was inspecting train No. 54, but had not completed it and had just come around the end of the caboose when he saw Neil, the respondent, walking in the center of the "scale track" smoking his pipe; that his face was turned toward witness; that he was walking straight ahead, standing up; that respondent put his hand to his mouth, took his pipe out and put it back; that when he saw Neil he could also see engine No. 22 coming along; that respondent was perhaps a car-length or less ahead of it; he also saw Hennessy, the brakeman on respondent's train, giving a signal to stop, but witness thought the first signal was given to set the air on train 54 for him, the second signal being a quick one; that the bell on engine No. 22 was ringing when he first saw the respondent and continued to ring until engine No. 22 stopped; that the engine was also making considerable noise with the exhaust; that the engine stopped immediately after Hennessy gave the second signal.

The brakeman on engine No. 22 testified that it was a quiet morning; that the bell was operated by air and continued to ring until after the respondent was struck; that the train was going between six and eight miles an hour; that from engine No. 54, engine No. 22 could have been seen where it hooked on to the coal-cars.

The engineer on train 54 testified that the bell was ringing as engine No. 22 passed his engine (No. 54), and continued to ring until after it stopped after the accident; that he was sitting in the cab of his engine and engine No. 22 was laboring as it went up the "scale track"; that it was a clear, quiet morning and the noise could be heard a considerable distance; that from his engine looking down the "scale track," engine No. 22 could be seen where it coupled on to the coal-cars; that there were no obstructions there whatever; that he saw respondent from the time he left witness' engine,

No. 54, to go up the "scale track" until engine No. 22, which struck him, obstructed the view; that he was walking straight ahead smoking a pipe, not looking to the left nor the right, but straight ahead and not stooping down; that his engine was about eight or nine car-lengths from where respondent was struck; that he had been running the engine under respondent for two or three months, and that he had never known respondent to inspect his train in the morning before they went out; that if he had been doing it daily, as respondent testified, witness would very likely have seen him; that he asked respondent when he was at the engine just before he was struck what was delaying the train getting out, and respondent said something about car inspectors and said he would go back and see what they were doing.

The car inspector, Baum, also testified that it was his business to inspect the train in the morning at the junction point, and that the conductor had nothing to do with it and never did it.

Hennessy, the brakeman on train No. 54, testified that he had been freight conductor on that road, and that the freight conductors never made personal inspections of the train before going out; that the car inspectors did it.

It seems that this witness stood at the caboose of the respondent's train and that respondent was between him and the engine hauling the coal-cars when the accident occurred. He testified that he saw engine No. 22 coming up the scale track with the bell ringing and it continued to ring until the engine was stopped; that it was working steam, pulling four cars of coal, and made considerable noise; that he saw the respondent just before he was hurt walking on the "scale track," five or six car-lengths from the caboose where witness was standing; that he was walking along, not stooping over, facing in a southerly direction; when he first saw respondent, he paid no attention to him and made no sign for him to get off the track, because he thought respondent would get off the track; that it was a usual thing for employees to walk on the track around the yards; that later he gave the respondent a sign to get off the track; that at that time he

had ample time to get off; that he thought respondent was looking in his direction; that he next gave a stop sign to the fireman on engine No. 22 and that he next gave the "washout" signal; at that time the engine was very close to respondent; that in his opinion after he gave the stop signal to the fireman the engine could not have been stopped before respondent was struck if he remained upon the track.

The respondent testified that he was walking along on the "scale track" smoking his pipe, stooped over and looking under his train to see that the brake rods, etc., were all in condition, and that he did not hear the bell nor the train until the engine was upon him. Some of the witnesses testified that when they saw respondent walking on the track he was erect and smoking a pipe and that he was not stooped over.

The foregoing statement of facts may be summarized briefly as follows:

A freight conductor, experienced in his work and familiar with switching-yards and their operation, stepped upon a track which he knew was constantly used for switching purposes, and walked along that track for several hundred feet without giving any attention to the track behind him. A switch engine attached to four loaded cars, with the bell ringing and the engine laboring up a one per cent grade, struck and injured him. He was seen by one of the employees on the engine some 500 feet away, apparently in the full possession of his faculties, and recognized as an employee and known by that fireman to be a conductor and to be familiar with his surroundings. The fireman paid no further attention to him, but presumed and assumed that he would step off the track before the engine reached him, in identically the same manner that another employee, Gregory, had stepped off the same track when engine No. 22 passed him.

A motion for a nonsuit was made at the close of plaintiff's testimony and renewed at the end of all of the testimony and denied. The appellant also moved for a directed verdict, which was denied.

As before stated, this action was brought under the act of Congress relative to injuries to employees by interstate railroads, and the appellant contends that said act of Congress is not applicable to this case, for the reason that respondent was not engaged in interstate commerce at the time of the accident, and also contends that there was no negligence whatever shown on the part of appellant.

1. We will first determine whether said act of Congress is applicable to the facts of this case.

That act of Congress refers only to interstate commerce, abrogates the fellow-servant rule, extends the carrier's liability to cases of injury and death, and restricts the defense of contributory negligence and assumption of risk.

In *Mondou v. New York, N. H. & H. R. R. Co.,* 223 U. S. 1, 32 Sup. Ct. 169, 56 L. ed. 327, said act was construed and held to be constitutional. Referring to the theory of that act, the court in *Fulgham v. Middle Valley R. R. Co.,* 167 Fed. 660, said:

"The theory of this legislation is that the public should share the misfortune of the families of those who are injured or killed in the *quasi*-public business in which railroads are engaged. So it is provided, in substance, where the employee is injured in the service of a railroad while engaging in interstate commerce, he shall have a cause of action for that injury, and this action he can maintain in his own name, although he may have by his own negligence contributed to the injury; but the damages in such case shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. Here the common-law doctrine of contributory negligence is abrogated in the interest of the employee, and the doctrine of comparative negligence substituted which *pro tanto* encourages care and diligence on the part of the employee."

Under sec. 1 of said act, it is provided that the railroad company shall be liable in damages to any person suffering injury or death resulting in whole or in part "from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its

negligence, in its cars, engines," etc. Under said act where the person is injured or killed on account of the negligence of the company, he may recover although he may have by his own negligence contributed to the injury; but the damage in such a case must be diminished by the jury in proportion to the amount of the negligence attributed to the employee. Under the provisions of sec. 4 of said act, it is provided that the employee shall not be held to assume the risk of his employment in any case where the violation by such common carrier of any statute enacted for the safety of the employees contributed to the death or injury of such employee, and as it is not claimed in this case that the company had violated any statute enacted for the safety of employees, the defense of assumption of risk remains as at the common law. Said act thus restricts the defense of contributory negligence where there is negligence on the part of the company as well as the assumption of risk where the company has violated any statute enacted for the safety of the employee. Said act limits a recovery to a case of an employee suffering an injury "while he is employed by such carrier in such commerce" (that is, interstate commerce).

Then, was the respondent engaged in interstate commerce at the time he was injured? His train was made up, consisting of about twenty cars, with intrastate and interstate freight. He had gone to the engine on the front end of his train and had a conversation with his engineer, and had given him his clearance card and was going back to his caboose. It appears from the evidence that at that time the car inspector was inspecting the respondent's train, and the respondent, instead of returning to his caboose on the open space between the track on which his train was standing and the "scale track," on which the switching was being done, went upon the "scale track" and, according to his testimony, was inspecting his train as he proceeded on his way to the rear of his train. Whether it was necessary for the conductor to return from the engine to the caboose on his train does not appear, but it does appear that it was not necessary for him to walk on the "scale track."

In *Van Brimmer v. Texas & P. Ry. Co.*, 190 Fed. 394, it was held that where a railroad brakeman was injured in making a flying-switch to set out a car transported wholly in intrastate traffic, though it was a part of the train carrying both interstate and intrastate freight, his injury did not occur while he was engaged in interstate commerce, and therefore was not within the provisions of said act of Congress.  The primary object of said act was to promote the safety of employees of railroads while actively engaged in the movement of interstate commerce.  As bearing upon this question, see *Snead v. Central of G. Ry. Co.*, 151 Fed. 608.

In *Phila. B. & W. R. Co. v. Tucker*, 35 App. D. C. 123, which involved the negligent killing of one Tucker, the court said:

"When Tucker was killed he was upon the premises of the defendant in response to its call, to assume the duties he had been engaged by the defendant to assume, and for their mutual interest and advantage," and there laid down the rule that the relation of master and servant, in so far as the obligation of the master to protect his servant is concerned, commences when the servant, in pursuance with his contract with the master, is rightfully and necessarily upon the premises of the master.

It is contended by counsel for appellant in the case at bar that the respondent in walking upon said scale track could not have been engaged within the scope of his employment; that there was nothing in his employment requiring that he should be on said "scale track"; that, on the contrary, the proper discharge of his duties would require that he should not be there.  While it may not have been his duty, and was carelessness on his part, under the facts of this case, to walk upon said "scale track," still we think he was engaged in interstate commerce to the extent of getting his train ready for that purpose.  It seems to us that preparation was being made to have his train leave Spirit Lake, and that he was engaged in getting his train ready for the transportation of freight both within the state and beyond its boundaries, and

that he was engaged in interstate commerce, within the meaning of that term as used in said act of Congress.

2. The next question presented is whether negligence has been shown on the part of the appellant. The respondent was an employee of varied and long experience in railroading; he was of mature years; in the full possession of his faculties; he had been employed by the appellant and had had considerable experience in, and was thoroughly familiar with, said yards, the tracks and the use to which such tracks were put. He knew that upon the switch track cars were apt to be moved at any time, and regardless of his knowledge and experience, he went upon the switch track without paying any heed or attention to the movement of the switch engine or to the ringing of the bell which could be heard on the bright, clear day on which the accident occurred at least a thousand feet, or to the noise made by the engine in its laboring up a one per cent grade with four loaded coal-cars. The exhaust of the steam and noise of the cars could be heard at least a quarter of a mile. The train was not running to exceed from eight to twelve miles an hour. The noise of the train and the ringing of the bell were heard by persons much farther away than was the respondent. Could the respondent, regardless of the consequences, carelessly or heedlessly pay no attention to the movement of the train under all of those facts and circumstances and legally charge the appellant with negligence? We have not been able to find, nor have we been cited to, a single decision where a railroad company has ever been held guilty of negligence under such circumstances and facts as surround this case. It is true, respondent testified that he did not hear the train nor hear the bell ring. He must have become oblivious to his surroundings and so absorbed as to have lost all sense of sight or sound. But there is no evidence to show that the engineer or fireman had any reason to believe that respondent was in that condition. Five or six witnesses on behalf of the defendant testified that the bell was ringing up to the time respondent was struck by the engine. These several witnesses also testified that the engine was laboring very hard and making considerable noise that

could be heard at least a quarter of a mile in hauling said coal-cars up said grade. The court was fully justified in giving instruction No. 10, by which the jury were instructed, as a matter of law, that they must find that the bell did ring up to the time respondent was struck by the engine.

The supreme court of the United States in *Aerkfetz v. Humphreys,* 145 U. S. 418, 12 Sup. Ct. 835, 36 L. ed. 758, held that a person in charge of a switch engine in a railroad-yard, used for the purpose of moving cars, has a right to act on the belief that the various employees in the yard, familiar with the continuously recurring movements of the cars, will take reasonable precaution against their approach, particularly where the cars are moving so slowly that ordinary attention on their part would enable them to avoid them, and that a railroad company is not guilty of negligence as against an employee, in moving its cars by a switch engine in its yards slowly, without sending a man in front of the cars to give notice to employees of their approach. In that case the court held that an abundance of time elapsed between the moment the cars entered upon the track upon which the employee was working and the moment they struck him, and that there could have been no thought or expectation on the part of the engineer or any other employee that the employee thus at work in a place of danger would pay no attention whatever to his safety, and that the engineer was not bound to assume that any employee, familiar with the manner of doing business, would be wholly indifferent to the going and coming of the cars, and that the engineer had the right to act on the belief that the various employees in the yard, familiar with the continuously recurring movement of the cars, would take reasonable precaution against their approach, and that it could not be held under such circumstances that the defendants were compelled to send someone in front of the cars for the mere sake of giving notice to employees, who had full knowledge of what was to be expected.

It seems to us that the case at bar is a stronger case for the defendant upon the facts than was that case. In the case at bar the bell was ringing, the engine laboring up the grade,

making a great deal of noise, at the time respondent was struck. In that case the plaintiff was engaged in working upon the track. In the case at bar the respondent claims he was inspecting his train, but from the great weight of evidence in the case he was doing no such thing; he was simply walking on the railroad track smoking his pipe. But had he been looking over his train, that would not have excused him from taking reasonable care to protect himself from the switching engine.

In *Anderson v. Great Northern Ry. Co.*, 15 Ida. 513, 99 Pac. 91, this court, speaking through Chief Justice Ailshie, said:

"When an engineer sees an adult on the track ahead of him, he ordinarily has a right to presume that he will get off the track before the train reaches him."

*Smith v. Altanta & C. R. Co.*, 130 N. C. 344, 42 S. E. 139, was a case very similar to the one at bar. The plaintiff was engaged in painting a switch target on one of the tracks of the defendant, the track being straight for several hundred feet, and in doing his work he was compelled to put himself in danger of passing trains, and while he was so engrossed he was struck by a switch engine, and in passing upon that case the court said: "The plaintiff labored under no infirmity. He was sober, intelligent, occupied a position where he could do his work with entire safety if he would only keep watch for the passing trains," and it was there held that an engineer who sees a person, apparently old enough to understand the necessity for care and watchfulness, walking along in front of a moving engine, may act upon the assumption that the person will step off the track in time to avoid injury. In the case at bar the fireman who saw the respondent on the track, knew it was the conductor, and paid no more attention to him, assuming, of course, that he would get off the track in time to protect himself. In the Smith case the court said:

"The fault, then, with his honor's charge, as we see it, is that he allowed the jury to consider, under the first issue, the continuing of his work by the plaintiff as evidence that he was engrossed in his work, and on that account was inadver-

tent to the approach of the train. The engineer, it appears to us, had the right to assume that the plaintiff, in possession of all his faculties, and not hampered by any obstructions that would have prevented his instantaneous avoidance of danger, would have stepped out of danger. It would be a difficult matter, indeed, for any important railroad system to carry on its business if each engineer of a switch engine is to stop his engine whenever he sees an employee continuing his work upon the approach of the engine, or the employee is to stop his work except for the second to step out of the way of the train.''

In *Pennsylvania Co. v. Myers,* 136 Ind. 242, 36 N. E. 32, the supreme court of Indiana said:

''And, second, even if appellant's servants had known of the presence of the deceased on the track in front of the moving train in time to have stopped it before the collision, they had a right to presume that he would step off the track in time to avoid injury, up to the last moment before he was struck. . . . . Therefore, ordinary care on their part did not require them to anticipate that he would not so step off, and did not require them to stop the train, and send a force forward sufficient to remove him.''

In the case of *Louisville & N. R. Co. v. Cronbach,* 12 Ind. App. 666, 41 N. E. 15, the court affirmed the doctrine laid down in the last above cited case. Referring to the presumption that one walking on a railroad track would step off the track in time to avoid injury, the court said:

''In the light of this presumption, there is no evidence, either direct or circumstantial, in our opinion, authorizing the inference that they had reasonable ground to believe, before the engine struck him, that Cartmell was unconscious of his danger, or that he was unable to avoid it. On the contrary, they may well have presumed that Cartmell knew before the engine reached him that it was moving toward him, and that he would step from the track before he was overtaken.''

In *Campbell v. Kansas City etc. R. Co.,* 55 Kan. 536, 40 Pac. 997, the court said:

"It is contended that Campbell was seen 500 feet ahead of the engine, and therefore the engineer should have stopped the train before reaching him. An engineer, however, is not bound to stop a train whenever he sees a person ahead upon the railroad, but has a right to assume that an adult person, apparently in the possession of his faculties, will exercise his senses, and step out of the way of danger before the engine reaches him."

And later in the decision the court said: "Campbell was a man of mature years, who had the use of his faculties; and, as he was moving and apparently capable of taking care of himself, the engineer had a right to presume until the last moment that he would leave the track, and not be run over."

In *Cincinnati etc. Ry. Co. v. Long, Admr.*, 112 Ind. 166, 13 N. E. 659, which was a case of a switchman, familiar with the locality and movement of the trains at the place where he was injured, the court in discussing the case, said:

"Persons in the control of railroad trains have a right to presume that men of experience will act reasonably in all given contingencies. They are not bound to anticipate and provide against extraordinary, unusual, and improbable conditions which involve inattention on the part of others, and their duty to persons who are thus situate only begins when they have good reason to suppose that such persons are unconsciously in peril, or disabled from avoiding it. It is a presumption that a person of mature age, and in the possession of his faculties, will exercise care for his own safety, and that he will not go to or remain in a perilous position when a slight effort would carry him to a place of safety. Accordingly, a watchman or lookout on a train, moving slowly, with bell ringing, may presume, when he observes a man walking soberly on or near the track, that such person has observed the train, if by the exercise of care he could have observed it. He may therefore reasonably presume, unless something indicates the contrary, that the person on the track will step aside, so as to avoid any injury"; and the court concludes that the facts of that case did not make a case of negligence against the railroad company.

To the same effect is *Carrier v. Missouri Pac. Ry. Co.,* 175 Mo. 470, 74 S. W. 1002.

In *Norfolk & W. Ry. Co. v. Gesswine,* 144 Fed. 56, 75 C. C. A. 214, which opinion was delivered by Judge Lurton, now on the supreme bench of the United States, the court held that in an action for death of a brakeman by collision with a passing train, as he was repairing the track, an instruction that his place of employment was a dangerous place, and that, if he was hurt while trains were being managed and operated in the usual and ordinary way, there could be no recovery, was proper.

The case at bar was not tried upon the theory that no warnings were given, but on the theory that it was the duty of the railroad company to stop its train and notify the respondent to remove himself from the track in order to avoid injury. Under the law, before the plaintiff could recover in this action, it must be shown that those in charge of the switching train knew that he did not hear the warnings or would not heed them and would not get off the track, and that they then wantonly continued to run the train and as a result injured him.

In *Copp v. Maine Cent. R. Co.,* 100 Me. 568, 62 Atl. 735, it was held that engineers running locomotives are not bound to stop or even decrease the speed of the locomotive merely because they see persons walking upon the track. They may ordinarily assume that such persons have made themselves aware of the approach of the locomotive and will seasonably leave the track for its free passage, and held that if such engineer makes all possible effort to stop the locomotive as soon as he has reason to believe that a person walking upon the track is in fact not aware of the approach of the locomotive, he is not guilty of negligence.

There is nothing in the record to show, or which proves or tends to prove, that the engineer or fireman on the switch train failed to make every possible effort to stop the locomotive after they, or either of them, had reason to believe that the respondent was not aware of the approach of the train. See, also, *Everett v. Los Angeles etc. R. Co.,* 115 Cal.

105, 43 Pac. 207, 34 L. R. A. 350; *Bookman v. Seaboard Air-Line Ry. Co.,* 152 Fed. 686, 81 C. C. A. 612.

It is held by many decisions that everyone about a switch-yard, as an employee or as a trespasser, must be taken to know the hazards of the situation and that safety requires the utmost vigilance. The danger is apparent, and every instinct of self-preservation sounds a loud warning. (*Erickson v. St. Paul & D. R. Co.,* 41 Minn. 500, 43 N. W. 332, 5 L. R. A. 786.)

In the case of *Norfolk & W. Ry. Co. v. Dean's Admx.,* 107 Va. 505, 59 S. E. 389, the court, referring to the action of the conductor, said:

"If the emergency-brake had been applied at the instant Whitworth discovered the presence of Dean upon the track, the accident would have been averted; but in the honest exercise of his discretion, in the light of his long experience, he did not at that moment consider Dean in a position of peril."

So in the case at bar. When the fireman on the switch engine saw the conductor walking leisurely on the track, in the honest exercise of his discretion and in the light of long experience, no doubt he did not at that moment consider the respondent in any peril whatever. (*Teel v. Ohio Riv. R. R. Co.,* 49 W. Va. 85, 38 S. E. 518; *Raines v. Chesapeake & O. Ry. Co.,* 39 W. Va. 50, 19 S. E. 565, 24 L. R. A. 226.)

As said in the last-cited case, we know of no rule and can find no case making it the duty of the engineer, under facts and circumstances like those in the case at bar, not to approach a man walking on a track nearer than the distance within which the train can be stopped. If the engineer saw the respondent on the track, and could have stopped the train, still he was fully justified, knowing him to be the conductor, in believing up to the last moment that he would move out of the way. (*Norwood v. Raleigh etc. Ry. Co.,* 111 N. C. 36, 16 S. E. 4; *Louisville & N. R. Co. v. Black,* 89 Ala. 313, 8 South. 246.)

In *Exum v. Atlantic Coast Line R. Co.,* 154 N. C. 408, 70 S. E. 845, 33 L. R. A., N. S., 169, the court said:

"In this class of cases it will be found generally that, where the company has been held liable, it is in cases where the party injured was not upon equal chances with the engineer to avoid the injury, where there was something suggesting the injured party's disadvantage or disability, as where the party injured is lying on a railroad track, apparently drunk or asleep, or is on a bridge or trestle, where he cannot escape, or cannot do so without great danger." (*Smalley v. Southern Ry. Co.*, 57 S. C. 243, 35 S. E. 489.)

In a note to *Central R. R. etc. Co. v. Vaughn* (93 Ala. 209, 9 South. 68), 30 Am. St. 50, by Mr. Freeman, it is said:

"The true principle, it is conceived, is that the engineer should see that the track is clear, but that, when an obstruction is perceived, the proper course to adopt will depend upon whether it is a living or inanimate object, and if it is a living object, whether it is an intelligent human being, capable, under ordinary circumstances, of discerning the means of securing safety, or a brute, which has no guide but mere instinct. If the object seen is an intelligent human being, it seems to be generally agreed that the engineer has a right to presume that he will get out of harm's way before the engine reaches him, and that it is not negligence to act upon that presumption."

In *Norfolk & Western R. Co. v. Johnson's Admr.*, 103 Va. 787, 50 S. E. 268, the court said:

"In the case at bar there was nothing to put the engineer upon his guard. The preponderance of the evidence shows that the plaintiff's intestate was doing what was done daily at that point. The engineer was confronted with no unusual situation, and he was not negligent, under such circumstances, in treating the plaintiff's intestate as free from danger."

In *Waldron v. Boston etc. R. Co.*, 71 N. H. 362, 52 Atl. 443, the court said:

"It is therefore immaterial whether the engineer in fact saw the deceased before the accident, or in time to have avoided the collision; for the question is, not what he might have done, but what his duty to Waldron required, in view of the latter's apparent duty and ability to protect himself." (*Atlantic Coast Line R. Co. v. Miller,* 53 Fla. 246, 44 South. 247.)

The fireman saw and recognized the respondent, who was a railroad conductor of experience, and expected, and had a right to expect, him to adopt ordinary and usual precautions of self-preservation. (See Ray's Work on Negligence of Imposed Duties, p. 134; Elliott on Railroads, sec. 1258; 33 Cyc. 800; Wharton on Negligence, sec. 389a.)

In the case at bar, when the fireman saw the respondent on the switch track 500 feet ahead of the engine and the engine was hauling four cars of coal up a one per cent grade at the rate of about ten miles an hour, with the bell ringing and the train making a noise that might easily be heard a quarter of a mile, the fireman and engineer were confronted with no unusual situation and the question presented here is not what the engineer might have done, but what his duty to the respondent required, in view of the latter's apparent duty and ability to protect himself by stepping off the track in time to avoid any injury. The engineer had a right to assume that the respondent, being a conductor, was in possession of his faculties of hearing and seeing, and to assume that he would not become so engrossed or engaged in his own thoughts as not to protect himself by stepping off the track before the engine struck him, for under the great weight of authority, even if the engineer had seen him up to the time the engine got to within a hundred feet of him, he had the right to assume that the respondent would protect himself from injury by stepping off the track. It would not have been negligence for the engineer to act upon that presumption. The respondent was an intelligent human being, had been long engaged in railroad service; had had large experience in switch-yards and as brakeman and conductor on trains, and the engineer had a right to expect him to protect himself from injury, under the circumstances, as any man of ordinary judgment and prudence would do. It would be unreasonable for this court to hold, under the facts of this case, that the engineer should have stopped his train and sent forward a brakeman to invite the conductor to get off the track, as under the facts of this case and the law applicable thereto, there was no negligence whatever shown on the part of the appellant.

In 2 Thompson on Negligence, sec. 1735, the author, in referring to the obligation of care and effort on the part of the railroad company, states that such care and effort do not generally commence at the time when one is seen on a railroad track and in no immediate danger, and says:

"It arises at the moment when he is seen to be in a perilous situation; then, but not until then, the effort to stop the train must commence. In fact, the language of most of the decisions which speak upon this question, speak of the obligation of care and effort in favor of the trespasser as arising at the point of time when his perilous situation is discovered or is known; they must have become aware both of his presence and his peril."

Conceding that the fireman on said engine knew of the presence of the conductor on said track, he had not become aware of the conductor's peril until Hennessy gave the "washout" signal to stop the engine, and that was then too late to protect the respondent from injury. Could it reasonably be presumed or assumed by the fireman and engineer that a conductor, familiar with the switching-yards, the methods used in switching and making up trains, and the use to which said "scale track" was put, would walk upon said track and become so absorbed in a matter that was or was not his duty to perform as to become oblivious to, and unconscious of, the ringing of the bell, the noise made by the laboring engine and cars, and the exhaust of steam? And was it negligence on the part of the company if its fireman and engineer presumed and assumed that a conductor, under such facts and circumstances, would step off the track? I think not. They may have known of his presence on the track, but certainly under the facts they did not know that he was in peril until it was too late to stop the train and prevent the accident. In railroad yards, where a large amount of switching is done, often many men are employed at various kinds of work that requires them to pass over or remain on some of the numerous tracks in doing their work, and if an engineer were required to stop his engine within a hundred feet of such men if they did not step off the track, the workmen would lose a great

deal of time or the switch engine would make slow progress with its work. It is the custom in such yards for the employees to continue their work and step off the track in time to save themselves from accident, and if a hard-and-fast rule is adopted, requiring the engineer in a switch-yard, where trains are run slowly, to stop his engine under such conditions, and circumstances, it would greatly retard transportation, both of passengers and freight. It is a well-recognized psychological fact that many persons will not step off a railway track until the train is nearly upon them, and it is also well recognized that many people would delight in stepping upon the track and stopping the train in order to show their importance, if it was the duty of the conductor to stop the train as soon as they stepped upon the track. But it is a well-established rule that where the engineer sees a person on the track, apparently in the full possession of his faculties, he has a right to presume that such person will step off in time to save himself from injury. To hold otherwise would go beyond any rule of negligence laid down in the books.

(3) The act of Congress under which this action was prosecuted provides that contributory negligence on the part of the plaintiff should not be a bar to recovery, but that damages should be diminished by the jury in proportion to the amount of negligence attributable to such employee. The trial court gave the proper instruction upon this question, and also advised the jury that the plaintiff was guilty of contributory negligence, and instructed them that it was their duty to diminish the damages in such proportion as they found his negligence contributed to the injury. The court also instructed the jury that they should reduce the amount of verdict by the amount of money he had received from the railroad company subsequent to his injury. It would appear from the verdict of $35,000 that the jury paid no attention whatever to those instructions of the court. The evidence shows that the company paid him $987.85 subsequent to the injury, and it does not appear that the jury paid any attention whatever to the instruction of the court upon that question.

(4) The provisions of sec. 4 of said act of Congress do not remove the defense of assumption of risk unless the injury or death of the employeé was contributed to by the violation on the part of the common carrier of any statute enacted for the safety of the employees. As before stated, it is not claimed in this case that the railroad company violated any such statute or that any such violation in any manner contributed to the injury of respondent, and it is clear that the respondent assumed certain risks in regard to his railroad work. He knew as much about the track where he was injured and its use and general surroundings and the probability that trains would be moved backward and forward thereon in switching operations as anyone, and also had the common knowledge that trainmen would presume, if they saw him upon the track, that he would get off before the engine would strike him; and if he was upon the track in the performance of his duty, he knew he was in danger of being injured if he did not heed the warnings of the bell upon the engine. (See *O'Neil v. Pittsburg etc. R. Co.,* 130 Fed. 204; *Goodes v. Boston & A. R. Co.,* 162 Mass. 287, 38 N. E. 500; *Olsen v. Andrews,* 168 Mass. 261, 47 N. E. 90.)

(5) It is suggested by counsel that the doctrine of the "last clear chance" is applicable to this case. We are not in accord with that suggestion, as it does not appear that the appellant presumed, or was bound to presume, that the respondent would not step off the track before the accident occurred, and when the engineer first realized that the respondent was in peril, the evidence clearly shows that he stopped his train within eighty feet, which was as quickly as it could have been stopped; and it does not appear that by the exercise of reasonable care and prudence the engineer could have prevented the accident.

(6) It is next contended that the verdict of $35,000 is excessive, and shows that it was rendered through passion and prejudice and without due deliberation. The respondent testified that he was forty years of age; that his salary as conductor averaged about $125 a month, which, if he worked continuously every month in the year, would amount to $1,500

a year. The amount of the verdict, $35,000, if put at interest at seven per cent, would give a return of $2,450 per year, which would probably be double the amount the respondent would earn, taking it one year with another, and at the death of respondent would leave $35,000. The amount of the verdict is so excessive that it leads us to believe that it was rendered through prejudice and passion and without deliberation.

(7) Some errors are assigned as to the admission and rejection of certain evidence, but we do not think it necessary to pass upon those any further than to say that there was not such error as would warrant a reversal of the judgment for that reason alone.

(8) The giving and refusing to give certain instructions is assigned as error. We will not undertake to repeat the instructions here, but will refer to them by number as they appear in the record.

The giving of instructions Nos. 1 and 3 was not error, as they correctly stated the law. Instruction No. 4 should not have been given. Instruction No. 14, as modified and given by the court, was a correct statement of the law. Instruction No. 6 should not have been given, as there is no evidence in the record showing that the respondent was oblivious to danger while walking on the track. Instruction No. 5, as requested by the defendant, correctly stated the law and should have been given. It was not error for the court to refuse to give instructions Nos. 10, 16 and 18 and 20 as requested by defendant. It was error for the court to refuse to give instructions Nos. 11, 15 and 17, as they correctly stated the law. Instruction No. 19, requested by defendant, as modified and given by the court, correctly stated the law.

For the foregoing reasons the judgment must be reversed and a new trial granted, and it is so ordered, with costs of this appeal in favor of appellant.

AILSHIE, J., Concurring Specially.—I agree with the general rule of law as stated by Mr. Justice Sullivan. This court has followed the most advanced and liberal rule that has

ever been approved by the courts in allowance of damages in this class of cases. (*Anderson v. Great Northern R. Co.*, 15 Ida. 513, 99 Pac. 91; *Fleenor v. Oregon S. L. R. Co.*, 16 Ida. 781, 102 Pac. 897; *Wheeler v. Oregon R. & N. Co.*, 16 Ida. 375, 102 Pac. 347; *Maloney v. Winston Bros. Co.*, 18 Ida. 740, 111 Pac. 1080.)    Where, however, there is a total failure to show negligence on the part of the defendant, there can be no recovery, and precaution and diligence cannot be required to such an extreme as would prevent an individual or. company from carrying on its ordinary business.    In this case it is clearly shown and is not denied that the respondent was guilty of gross negligence.    He was at a place where his employment did not require, but rather forbade, him being. The fact, however, that he was in a place of danger did not license the company to run over him or to in any degree lessen its vigilance in maintaining a lookout for anyone who might come in the way of its engines.    Clearly respondent was in no real or apparent danger when walking on the track five hundred feet ahead of the switch engine, and the engineer was then under no duty to slow up or stop the train on this account.    He was an employee and train conductor, physically and mentally sound and under no disability.    The engineer and fireman say they did not see him any more until after the accident, yet it is clearly shown that he was on the track from that time until he was injured.    I realize that the company is not required to maintain the same degree of vigilance in its switch-yards, when making up trains and cutting out cars, in the way of maintaining lookouts and slowing up when someone comes onto the track that is required of it outside its yards and at crossings.    Notwithstanding this consideration, I am not prepared to say in this case that there is absolutely no evidence of any negligence on the part of the company in not discovering the respondent on the track sooner than was done, or, in other words, in not maintaining more or greater vigilance in its lookout over the track in the direction in which this engine No. 22 was backing up.

Since this case must be again tried, I refrain from any further comment on the evidence on this point.

In any possible view of the law, the verdict in this case is exorbitant and excessive. If the jury should find the company guilty of negligence sufficient to support a verdict, still they are commanded by the act of Congress to diminish the damages in proportion to the amount of negligence attributable to the employee. This they certainly failed to do in the present case. I concur in reversing the judgment and ordering a new trial.

STEWART, C. J., Dissenting in Part, and Concurring in Part and in the Judgment.—I am unable to agree with that portion of the opinion written by Mr. Justice Sullivan in which he discusses the law of negligence on the part of the railway company, and applies the same to the facts proven in this case.

It appears that both the engineer and fireman were in a position to have seen the respondent upon the track from the time that Moore first saw the respondent up to a point not more than a car's-length distant from the respondent at the time he was struck.

It is also shown by the evidence that after the respondent was seen by Moore, who was fireman on the engine which struck the respondent, no effort was made by either the fireman or the engineer upon the engine to give the respondent any different signal of the approaching of such engine than was being given by the ringing of the bell and the noise from the engine before the respondent was seen by Moore, the fireman.

There is no evidence to show that during the time intervening between the time Moore first saw the respondent upon the track and the time the engine struck the respondent, either the engineer or the fireman were in any way engaged so as to prevent them from seeing the respondent during that period of time, and no reason given why they did not again look down the track and see whether the respondent was leaving or had left the track after he had first been seen. With the knowledge of the company that the respondent was upon the track, and that if he did not leave it he would be struck

by the engine, the employees in charge of the engine which struck the respondent did not exercise special care or watchfulness at any time between the time they first ascertained that the respondent was on the track and in danger of being struck by the engine, to the time he was struck, and with full knowledge during all such times that the respondent was on the track and would be struck if he did not leave the track. These are questions to be considered in determining the negligence of the appellant; and, also, did the employees exercise ordinary care which a reasonable and prudent person should exercise under the circumstances to avoid the injury to the respondent. The determination of these questions, in the first instance, was with the jury. The jury having found negligence on the part of the appellant, such verdict should not be disturbed by this court, if there is evidence from which reasonable men might disagree as to negligence. The verdict should not be set aside. (*Wheeler v. Oregon R. & N. Co.*, 16 Ida. 375, 102 Pac. 347.) To say as a matter of law, as is said in this opinion by Mr. Justice Sullivan, that there was no negligence on the part of the appellant, is, in my judgment, not justified by the law, nor is it a proper regard for the value and protection of human life. I do not believe that the cases upon which Mr. Justice Sullivan relies, when closely analyzed, sustain the rule announced in that opinion. I shall not undertake in this dissenting opinion to analyze those cases, for the reason that the judgment rendered is to be reversed and the case may come to this court again upon appeal, when this question may again be considered.

Mr. Justice Sullivan says in his opinion, after reviewing a number of cases from other courts: "It would be unreasonable for this court to hold under the facts of this case that the engineer should have stopped his train and sent forward a brakeman to invite the conductor to get off the track, as under the facts of this case and the law applicable thereto there was no negligence whatever shown on the part of the appellant." The substance of this statement is repeated a number of times in the opinion, and it would seem to be the rule announced in that opinion. I cannot approve this rule.

I am clearly of the opinion that the facts were sufficient to justify the jury in finding that there was negligence on the part of the appellant, and that such negligence was the proximate cause of the injury. Neither do I think it necessary for this court to hold, under the facts of this case, that it was the duty of the engineer in charge of the train that struck the respondent to have stopped his train and sent forward a brakeman to invite the conductor to get off the track. It is very easy to make that kind of a statement in order to protect an employee who does not do his duty, and also in defense of the wrongful acts and carelessness of the company in operating its train, but that result does not follow from the rule of law which imposes a duty on the part of the railway company, under the facts of the case, to use all reasonable care in averting the injury, which clearly appears not to have been done under the evidence shown in this case.

As I understand the general rule of law applicable to the facts of this case, it is, that one's own negligence in such cases precludes recovery, subject to the qualification that where the defendant has discovered or had knowledge of the peril of the plaintiff's position, and it is apparent that the plaintiff makes no effort whatever to escape therefrom, the duty becomes imperative for the defendant to use all reasonable care to avoid the injury, and that if this is not done, the defendant becomes liable, notwithstanding the negligence of the plaintiff or deceased. This rule, in my opinion, is applicable to the facts shown by the evidence in this case. I do not believe that where a railway company, operating a train upon its right of way, either upon its general track or in the yards where trains are transferred and made up, after a danger or peril becomes apparent to those in charge of the train, and after it is brought to the knowledge of the employees in charge of such train that the danger is not recognized or appreciated by a person passing along the track in front of the train, such facts can excuse the company from exercising reasonable effort to stop the train and prevent the injury.

From an examination of the cases cited in Mr. Justice Sullivan's opinion, and other cases, it will be observed that

the facts recited in such cases are generally different, and that the conduct and acts of the employees under circumstances which tend to show negligence on the part of the railway company are not alike, and that each case is determined by its own facts and circumstances. An examination of these various opinions leads me to believe that under the facts shown by the record in this case the trial court, and also this court, should not determine as a matter of law that the railway company had discharged itself from liability, by its employees observing all the precautions which the circumstances and emergency demanded. (*Neary et al. v. Northern Pac. Ry. Co. et al.,* 37 Mont. 461, 97 Pac. 944, 19 L. R. A., N. S., 446; *Riley v. Northern Pac. Ry. Co.,* 36 Mont. 545, 93 Pac. 948; *Louisville & N. R. Co. v. Morlay,* 86 Fed. 240, 30 C. C. A. 6; *Bouwnmeester v. Grand R. & I. Co.,* 63 Mich. 557, 30 N. W. 337; *Kelley v. Chicago B. & Q. R. Co.,* 118 Iowa, 387, 92 N. W. 45; *Louisville & N. R. Co. v. Trammell,* 93 Ala. 350, 9 So. 870; *Watts v. Richmond & D. R. Co.,* 89 Ga. 277, 15 S. E. 365; *Kansas & Ark. V. Ry. Co. v. Fitzhugh,* 61 Ark. 341, 54 Am. St. 211, 33 S. W. 960; *St. Louis S. W. Ry. Co. v. Bishop,* 14 Tex. Civ. App. 504, 37 S. W. 764; *Erickson v. St. Paul & D. R. Co.,* 41 Minn. 500, 43 N. W. 332, 5 L. R. A. 786; *Schulz v. Chicago, M. & St. P. Ry. Co.,* 57 Minn. 271, 59 N. W. 192; *Mellon v. Great N. Ry. Co.* (Minn.), 143 N. W. 116; *Brown v. Chicago B. & Q. R. Co.* (Minn.), 134 N. W. 315; *Chamberlain v. Missouri Pac. R. Co.,* 133 Mo. 587, 33 S. W. 437, 34 S. W. 842; *Isbell v. New York N. H. Ry. Co.,* 25 Conn. 555; *Dale v. Colfax Coal Co.,* 131 Iowa, 67, 107 N. W. 1096.)

This court, also, in my judgment, in the case of *Anderson v. Great Northern Ry. Co.,* 15 Ida. 513, 99 Pac. 91, announces the same general principle of law, and this rule should be adhered to by this court in a case where the facts shown are of the same general character as the facts in this case.

I concur in the opinion of Mr. Justice Sullivan in his discussion of the Employer's Liability Act enacted by Congress in 1908 and the amendment made in 1910, and I also concur in the opinion as to the judgment being excessive. It is

apparent that the jury did not observe the instructions of the trial court with reference to their duty to consider the contributory negligence of the plaintiff in determining the amount of damages in case they found for the plaintiff, and on account of such judgment, I think it is the duty of this court to reverse the judgment.