Statement.

# Richmond.

103 787
108 391
f108 454

NORFOLK & WESTERN RAILWAY CO. v. JOHNSON'S ADMINIS-
TRATOR.

March 23, 1905.

Absent, Cardwell, J.

1. NEGLIGENCE—*Proof Required.*—In an action for negligent injury, the burden is on the plaintiff to prove the negligence alleged, and the evidence must show more than a mere probability of negligence. It is not sufficient that the evidence is consistent equally with the existence or non-existence of negligence. There must be affirmative and preponderating proof of the defendant's negligence.

2. RAILROADS—*Parallel Tracks—Walking on Intervening Space—Licenses—Case at Bar.*—Where there is an eight-foot space between two tracks of a railroad, which is continually travelled from morning till night by licensees, and it is a common occurrence for trains to be running on both tracks with people between them on said space, it is not negligence on the part of an engineer running a train on one of said tracks, who sees a person on said space while another train is running on the other track, to fail to stop his train or to slacken its speed. He owes the licensee the duty of foresight, and if, while exercising foresight, he discovers such person as soon as he changes his position to one of danger, and then does all in his power to avoid striking him, but without avail, he has discharged his duty to the licensee and the master is not liable. The fact that the overhanging of the cars reduces the space between the tracks to only three feet does not change the result where people daily and constantly use this three feet with safety.

Error to a judgment of the Circuit Court of Norfolk county, in an action of trespass on the case, wherein the defendant in

error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Hughes & Little,* for the plaintiff in error.

*Jeffries & Lawless, E. P. Buford* and *S. V. Southall, Jr.,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was brought by the administrator of Edward Johnson, deceased, to recover damages of the Norfolk & Western Railway Company for having, as alleged, caused the death of his intestate by the negligent management of one of its passenger trains.

There was a demurrer to the evidence by the defendant company, which was overruled, and judgment given in favor of the plaintiff for $3,000, the amount ascertained by the jury to be the damage sustained, if upon the demurrer to the evidence the court should be of opinion that the law was with the plaintiff. The correctness of this judgment is the subject of our present consideration.

It appears that the double tracks of the defendant railroad company, at the place of the accident, run through quite a populous suburb of the town of Berkley. Between these tracks there was a well-beaten cinder walkway eight feet in width, which had been used for many years by the public as a convenient route, with the acquiescence of the defendant company. The plaintiff's intestate crossed the western track and entered this eight-foot walkway, and started in a northerly direction between the two tracks. As soon as he entered the walkway

mentioned, a long freight train, composed of sixty empty gondolas, running in a southerly direction, commenced to pass him on the left, and almost immediately the "cannon ball" passenger train, going in the same direction that decedent was, came up in his rear, passing on the other track to his right, thus putting deceased between the two trains, where he was struck by the passenger train and killed.

The law applicable to this class of cases has been so often reiterated that it need here be only adverted to. The plaintiff's intestate was a bare licensee, occupying the right of way of the defendant company at a point, as now insisted, of imminent peril when two trains were passing each other, an occurrence likely, as shown by the evidence, to happen at almost any time.

The contention relied on is that the engineer on the passenger train saw the deceased in time to stop his train, and that the situation of deceased, when first seen, was one of such obvious danger as to put an ordinarily prudent man on notice, and require him to stop and thereby avoid the accident. In other words, that notwithstanding the conceded negligence of the deceased, the company had the last chance to avoid the accident, and having failed to avert it, must be held responsible. It follows from this contention that the plaintiff cannot recover in this case unless the engineer in charge of the "cannon ball" train failed to take ordinary care to avert the accident after discovering the peril of the deceased, or after, by the exercise of ordinary care, he ought to have discovered such peril. The burden is on the plaintiff to prove the negligence alleged, and the evidence must show more than a mere probability of negligence. It is not sufficient that the evidence is consistent equally with the existence or non-existence of negligence. There must be affirmative and preponderating proof of the defendant's negligence. *N. & W. Ry. Co.* v. *Cromer*, 99

Va. 765, 40 S. E. 54.  The sole question in the case is, When did the engineer discover the peril of the plaintiff's intestate, or when ought he, in the exercise of ordinary care, to have discovered such peril?

The evidence of the plaintiff tends to show that the deceased never once looked back from the moment he stepped between the two tracks and turned his face northward; that the great noise produced by the rumbling of the sixty empty gondolas that were passing was such as to make it impossible for the deceased to hear the approach of the "cannon ball" train in his rear, or any alarm, even if any had been given. It further tends to show that after allowing for the projection or overhang of the two trains, when passing each other, there only remained three feet of the intervening eight-foot space upon which the deceased could walk.  The contention of the defendant in error is that, in a space only three feet wide, made by two trains passing each other at a rapid rate of speed, it is impossible that a man could walk and escape destruction; that if deceased had walked precisely in the middle of the space, and allowance was made for a man of ordinary width, there would be a margin of less than six inches on either side, so that if the person thus situated had deviated from the exact centre he would have come in contact with one or the other of the moving trains.  It is insisted that no sane man would knowingly place himself in a position of such peril.  It is admitted that the engineer saw the deceased in ample time to have stopped his train before reaching him, and it is contended that the position of the deceased was so obviously perilous that the engineer must be charged with knowledge of such danger, and be held guilty of negligence in not taking steps in time to avoid the accident.  The engineer is shown to be one of the most accomplished in the service of the defendant company, and selected because of his great skill and large expe-

rience to run this "cannon ball" train, the usual speed of which was from sixty to sixty-five miles per hour. He testifies that he first saw the deceased when some sixteen hundred feet from him; that he had ample time in which to stop the train; that he could easily have stopped the train more than once; but that it was an every-day occurrence to see people between two tracks where he saw the deceased, and for two trains to pass each other at that point with people between the tracks, and, therefore, that he did not consider the deceased in danger; that "he had no doubt or uncertainty as to the man's position, and was satisfied he was perfectly safe"; that when he first discovered deceased to be in an unsafe position he was only eighty or eighty-five feet from him, at which time he was stooping and too near to his train; that he immediately put on the emergency brake, blew the alarm whistles, and did all that he could to save him. The evidence of the engineer is, fully corroborated by that of the fireman, who adds that if they stopped every time they saw a man between the tracks they would never get into town.

There is no contradiction of the clear and emphatic statement of these witnesses. On the contrary, it is inferentially corroborated by the evidence of the plaintiff, which shows that the walkway in question, between these two tracks, is continuously in use by the public, the witnesses employing the following expressions with respect thereto: "It is continually traveled from morning until night;" "they are steady going all the time;" "you can see them going and coming any time you look out there." It is also shown by the plaintiff that many trains, passenger and freight, pass there every day.

With all of these people passing continually between these two tracks and so many trains passing every day, it would seem that the trains must of necessity sometimes pass each other with persons between the tracks. As already seen, the

plaintiff relies solely upon the assumption that it was impossible for a man to be safe between two trains in a space three feet wide, and that it was the duty of the engineer to recognize that as a fact and stop his train.

In the light of the whole evidence on the subject, as to which there is no conflict, we cannot hold the defendant company responsible upon that assumption alone. To the uninitiated the act of walking at all between two railroad tracks, under the conditions here existing, seems a degree of recklessness that is simply unaccountable. Those, however, who grow familiar with such surroundings seem to lose all consciousness of danger, and daily take risks that cannot, by others, be reconciled with sanity. In the case at bar there was nothing to put the engineer upon his guard. The preponderance of the evidence shows that the plaintiff's intestate was doing what was done daily at that point. The engineer was confronted with no unusual situation, and he was not negligent, under such circumstances, in treating the plaintiff's intestate as free from danger. As soon as he saw from the stooping attitude assumed by the decedent that he had placed himself too near to his train, he did all that was in his power to avoid the accident, and this was all the law required of him.

One of the principal witnesses for the plaintiff, in answer to the question whether or not the deceased was accustomed to use that pathway, replied as follows: "I know he was not accustomed to use it, because he had never crossed that track more than five or six times in his whole life." May not this inexperience be the explanation of the decedent's untimely end? He was not accustomed to the dangerous situation in which he found himself, and consequently became confused and did some imprudent act which was fatal.

Upon the whole, we are of opinion that the plaintiff's case

was not made out, and that upon the demurrer to the evidence there should have been judgment for the plaintiff in error.

The judgment complained of must, therefore, be reversed, and judgment entered by this court in conformity with the conclusion herein reached.

*Reversed.*