# Richmond

JAMES VAUGHN AND EDWARD SPEARS v. REBECCA HUFF, ADMINISTRATRIX, ETC.

March 3, 1947.

Record No. 3156.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*H. C. Bolling, M. M. Heuser, D. F. Kennedy* and *M. W. Vicars,* for the plaintiffs in error.

*Fred B. Greear,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Patrick Huff, a 59 year-old farmer, was found on April 23, 1945, about 4:30 p. m., seriously wounded and unconscious, lying on his back, on the southerly shoulder of State Highway No. 610, about 300 yards west of his home on that road. The highway runs east and west. He was 2 or 3 feet from the edge of the macadam or hard surface of the highway, near a path which led off the road southwardly to the front gate entrance of a vacant farmhouse. His head was pointed eastwardly and his feet westwardly, his body lying nearly parallel with the road. Blood was on his face and he was breathing heavily and with great dif-

ficulty. About 6 feet west of his feet was a splotch of blood in the gravel. Near by was a "scuffed place" in the gravel, which looked as if it might have been made when the foot of a man was knocked from under him. Huff was removed to a hospital, and died about forty-eight hours later without regaining consciousness. There was no medical testimony.

A short time before Huff was found injured, he was seen walking in an easterly direction, towards the point of the accident, on his left or proper side of the road, carrying a scythe. He had been cutting weeds on a farm about a half-mile distant. The scythe and his hat were found on the hard surface, the scythe slightly south of the center of the road and his hat a foot or a foot and a half south of the scythe.

On October 1, 1945, Rebecca Huff, administratrix of the estate of Patrick Huff, deceased, his widow, instituted this proceeding by notice of motion against James Vaughn and Edward Spears. She alleged that the death of her intestate was caused by the negligent operation of an automobile owned by James Vaughn, and driven by Edward Spears, a servant and employee of Vaughn.

The elements of specific negligence alleged were that Spears failed to drive his automobile with ordinary care, failed to maintain a proper lookout, failed to drive on the right-hand side of the hard surface of the highway, and especially failed to drive at a moderate and safe rate of speed.

The trial of the case was begun on January 30, 1946. The defendants pleaded the general issue and contributory negligence on the part of the decedent.

A large volume of evidence was taken. The court refused motions of the defendants to strike the evidence both at the conclusion of the plaintiff's evidence and at the conclusion of all the evidence. The case was then submitted to the jury, under numerous instructions. The jury returned a verdict for the plaintiff in the sum of $7,500. Upon that verdict judgment was entered over the objection of the defendants.

The errors assigned are that the trial court erred in over-ruling the motions to strike the evidence, in refusing to hold that the decedent was guilty of contributory negligence, as a matter of law, and in giving certain instructions offered by the plaintiff and refusing certain instructions offered by the defendants.

There were no eye-witnesses to the injury inflicted upon the decedent, and the evidence as to how, why, and when he was injured is wholly circumstantial and not without conflict.

The accident occurred on a sharp curve in the road at a point where the road has a small bank on either side. The curve is so sharp that the first person who discovered the injured man decided that he had better drive his automobile up the road, turn and come back, because he feared some other car would come around the curve and cause an accident.

In addition to the facts formerly stated, other physical facts found at the scene showed tracks of automobile tires forming an arc around the point where Huff was found, along the southern side of the road off the hard surface and in the side of a bank off the highway. The four wheels of the car were off the highway and on a portion of the bank for a distance of 45 feet. From the point where they first started to leave the highway to the point where they stopped was 105 feet. The hard surface of the road was about 16 feet wide. The longest distance all the tires were off the road was about 6 feet from the hard surface. The dirt shoulder where Huff was lying sloped gradually a distance of about 6 feet to a ditch. The ground then rose in a bank to a height estimated at 30 inches or more. The ditch line was fairly smooth, and the car had apparently stopped 40 or 50 feet east of where Huff was lying, near a small pipe laid along the ditch line under the roadway leading to the vacant farmhouse. The car then apparently backed up about 30 feet westwardly. It had then gone forward again easterly, cutting across the ditch to the hard surface of the road.

The day was clear. While the surface of the road was

dry, there was some water in the ditch near where it was crossed by the farm road. When the car started up after backing, its wheels dug a hole in the ground, and there was some soft dirt thrown to the west. The mud in the ditch and on the bank was yellow in color. Some of the mud on the wheels left a print of their tread on the road. This imprint continued eastwardly on the road to Norton, towards the intersection of Route 610 with Route 612, becoming less visible as it proceeded. At the intersection, the same tracks turned off of Route 610 into Route 612, reversing their direction, and headed towards Big Stone Gap.

Route 610 is a main State highway between the town of Big Stone Gap on the west and the town of Norton on the east. Eight hundred feet easterly of the scene of the accident, highway No. 612, known as the Back Valley Road, branches off of Route 610. About three and one-half miles west of the intersection, the two routes again intersect, and Route 610, the main highway, continues on to Big Stone Gap.

Within fifteen or twenty minutes from the time that Huff was found injured, the police began an investigation. They interviewed numerous witnesses in the surrounding locality, trying to find a clue to the identity of the driver of the automobile which struck Huff. After learning that Spears had been seen driving a black Chevrolet automobile taxi that afternoon between Norton and Big Stone Gap, they investigated his movements on the day in question. They learned that he had taken some passengers from Norton to Big Stone Gap on the afternoon of April 23rd.

Several witnesses, interviewed a few days after the accident, testified that they remembered seeing Spears driving a taxi on the afternoon of the accident on Route 612 towards Big Stone Gap, with two female passengers in his car, and that they thought they saw the same car pass again on the same road going towards the same destination about thirty minutes thereafter on a second trip, occupied only by the driver. There was some difference between these witnesses as to the color of the car, the taxi sign, and the marks on it; but there was a general identification of Spears.

A witness, the person who last saw Huff before he was injured, said that, walking in a westerly direction along Route 610 towards her home, she met and passed Huff, bound eastwardly, a short distance from where the accident took place. She also said that Spears, driving a taxicab easterly, met and passed her on her way home that afternoon, but she did not remember whether that was before or after she met Huff. She further said that another automobile, containing about five passengers, passed her going towards Big Stone Gap a few minutes or seconds after she saw Huff on the road. Her attention was directed to this other car by the blowing of its horn and the fact that it was travelling "pretty fast." Henry Sturgill testified that on two occasions when he and Spears talked to this witness about the accident, without disclosing Spears' identity, she did not then recognize Spears, and said that she did not, in fact, know him.

The police officers, on May 1st, examined Spears' car. They found it equipped with recapped tires, which made tread marks similar to those which ran off the highway where the accident occurred, and continued to the intersection of Routes 610 and 612. They were also similar to tread marks on the right-hand side of Route 612, at the point where Spears said that he had stopped on a trip to Big Stone Gap that day. They found a dented place in the left side of the hood of his car and a long scratch as if made by a sharp instrument running from the front left side of the hood to a point near its rear. Upon removing the tires from the car, dirt was found between the tire and the rim on the right wheel which was similar in color to the dirt of the bank on the side of the road where Huff was hurt. The radio antenna on the left side of the car was broken off. The piece of the aerial remaining on the car was bent towards the back of the car. One of the two small plastic insulators or knobs which held the antenna on the car was broken and its top portion missing. The insulators were removed from the car and search was made at the scene of Huff's injury to find the missing piece.

A police sergeant testified that he and his police associates had made, perhaps, fifty trips in the valley working on the case, and had many times vainly searched the scene of the accident for any object which might furnish a clue to the identity of the car involved.

The broken insulator was shown to Creed Collier, the employer of Huff, and Barney Williams, a son-in-law of Huff. About ten or eleven days after Huff was injured, the latter two went to the scene of the accident. They got down on their hands and knees, and started picking up and examining the gravel and loose objects on the shoulder of the road. Williams found, pressed in the dirt, twelve or fifteen inches from the hard surface, a piece of plastic which matched the material of the knob broken from Spears' car, and exactly fitted the section of the broken knob removed from the car. They reported this to the police.

Spears testified that on the afternoon of the accident he left Norton about 4:00 p. m., with three passengers for Big Stone Gap, ten miles away. One of the passengers left the car east of the intersection of Routes 610 and 612. Just before reaching that intersection, one of the two remaining passengers, asked Spears for a match to light a cigarette. He drove his car off the highway at the intersection, and got out of the car to search his pockets for a match. While there, one of his passengers suggested that they drive over Route 612 to Big Stone Gap, and he consented. The two passengers got out at Big Stone Gap. Spears said he then decided to return by Highway No. 23, leading in a northerly direction towards Appalachia two miles away, hoping to pick up passengers in that town and return on Route 23 to Norton. Route 23 runs somewhat parallel with Route 610 about four or five miles further to the north. By a previous arrangement with the two passengers he carried to Big Stone Gap, Spears returned to that town about 9:00 p. m. of the same evening to transport them back to their homes in Norton. He made the second trip that night going and returning over Route 610, passing the scene of the accident twice. He said that on or about April 21st, he had passed

the same place several times, delivering telegrams. He denied making any other trips on April 23rd over Routes 610 or 612.

Both Spears and his wife testified that they noticed on April 21st or 22nd, that his radio aerial had been broken, a portion of it lost and its connection with the car damaged and injured. He said he thought it had been broken by a truck when his car had been parked on a street near his home. Two other witnesses stated that they had observed that the aerial wire was broken off before April 23rd, and one of them testified that one of the insulators for the antenna was broken or chipped when James Vaughn purchased the car in December, 1944. All of the broken part was not found.

Spears, 48 years old, had lived in Wise county 25 or 30 years. During that time he had been a police officer and a deputy sheriff. He had driven an automobile about 20 years, and had been driving a taxi for James Vaughn about 4 months.

The dent in the hood of Spears' car was conclusively shown to have been made in an accident which happened in Norton before Huff was injured. It was conceded that a very large number of automobiles in Wise county were equipped with recapped tires bearing treads similar to the tires on Spears' car.

There was evidence of another car passing the scene of the accident bound westerly about the time of Huff's injury, and of still another car on Route 610 easterly of the accident bound towards Norton. Alex Blevins, a taxi driver, said he saw Spears on the afternoon in question on U. S. Highway 23, about 7 miles east of Appalachia, driving towards Norton.

The theory of the plaintiff is that after Spears let out his two passengers at Big Stone Gap, he immediately started back to Norton on route 610; that on this trip he negligently struck Huff on the shoulder of the highway after the latter had crossed the road supposedly to leave his scythe, as usual, at the nearby vacant farmhouse; that he then hurried from

the scene of the accident, without stopping to render aid to the injured man, going on to the intersection of Route 612, and thence over Route 612 to Big Stone Gap, returning to Norton by way of Route 23, through Appalachia.

The defendant denies any connection with the accident, and contends that the evidence wholly fails to show when, how, and why it happened, or who struck Huff.

Was Spears the driver of the automobile that struck Huff? ▮ The physical facts, the inferences from them, and evidence of Spears' movements point directly to him as the driver of the automobile. The evidence, circumstantial as it was, was sufficient to present a jury question on that issue. Under well settled rules, the verdict of the jury must be considered as settling that question of fact.

Was the evidence, however, sufficient to establish either the negligence of Spears or the contributory negligence of the deceased?

Here we have a case where a man, in full possession of his faculties and senses, was found wounded and unconscious on the wrong side of the highway, upon which he was last seen walking in an easterly direction. It is not known how long he had been lying there before he was discovered.

The physical facts indicate that Huff was struck by an automobile going in the same direction in which he was bound. It is not disclosed how or why a car, driven 6 feet off the hard surface, struck him about 2 feet from that surface, nor how or why Huff reached the point where he was struck, wherever that may have been.

Did the car, running off the road, strike Huff? Did its driver pull off the road because he saw the scythe and hat on the hard surface and the body of Huff on the shoulder of the road, and later back his car for an investigation?

There were no skid marks on the paved highway. The tire marks off the hard surface indicate an effort on the part of the driver to avoid striking a person on the road or its shoulder as strongly or more strongly than they indicate loss of control or excessive speed. We do not know whether the driver of the car which struck Huff was confronted with

a sudden emergency by seeing the latter on the side of the road and swerved to the right to avoid striking him, or whether Huff, seeing or hearing the approach of the car, became confused and continued to his right, and was then struck by the car.

It is suggested that the yellow mud found between the tire and rim of Spears' car shows that it was impressed there by high speed of the car. Granting that the circumstances justify the inference that the mud came from the scene of the accident, we are met with the suggestion that either the lack of pressure in the car tires or the consistency of the mud may have been a potent factor in its presence. The car that drove off the hard surface apparently stopped in a short distance.

Whatever presumption or inference there is as to the negligence of the driver of the car is, of necessity, based upon a presumption or inference rather than upon established facts. The physical facts afford ground for unlimited speculation. Considering the variety of circumstances which may have confronted the driver of the car that went off the highway, here claimed to be the car of Spears, we can draw no reasonable inference from the physical facts that the driver failed to use ordinary care. There is no affirmative evidence of his failure to keep a proper lookout or have his car under control. If it be said that the physical facts create any such inference, they are equally susceptible of a contrary inference. Thus, the accident may have been attributable to one of several causes, for some of which the driver of the car was responsible and for some of which he was not responsible. He may have failed to stop from fright or fear of consequences, guilty or not guilty. Neither inference is based upon any known fact. In the absence of necessary facts, no *prima facie* case of negligence has been shown.

Nor is the contributory negligence of the deceased to be presumed. Whether he was walking on the wrong side of the road, had just crossed the road to leave his scythe at the abandoned farm, or whether he walked in front of the car swerving off the road, we do not know.

██ Negligence will not be inferred from the mere fact that an injury has occurred, nor from the presumption of care on the part of the injured person. It must be proved by direct or circumstantial evidence, affirmative and preponderating, and not left to conjecture or guess. *Yeary* v. *Holbrook*, 171 Va. 266, 198 S. E. 441.

██ "The burden is on the plaintiff to prove the negligence alleged, and the evidence must show more than a mere probability of negligence. It is not sufficient that the evidence is consistent equally with the existence or nonexistence of negligence. There must be affirmative and preponderating proof of the defendant's negligence." *Norfolk, etc., R. Co.* v. *Johnson*, 103 Va. 787, 789, 50 S. E. 268.

██ "Negligence will not be imputed or presumed, and in an action for negligent injuries the burden is on the plaintiff to prove that the defendant was negligent as alleged and that its negligence was the proximate cause of the injury complained of." 7 Digest of Va. & W. Va. Reports, (Michie) Negligence, page 678, and many cases cited. *Bailey* v. *Fore*, 163 Va. 611, 617, 177 S. E. 100.

██ "Another general rule of uniform observance in automobile cases is that a presumption cannot be based upon a presumption, nor can an inference be drawn from a presumption." Vol. 9, Part 2, Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition, p. 298; *Yeary* v. *Holbrook, supra.*

In the recent case of *Arnold* v. *Wood*, 173 Va. 18, 3 S. E. (2d) 374, the general principles there stated are applicable here. There Mr. Justice Eggleston said:

"This court said in *Chesapeake, etc., R. Co.* v. *Heath*, 103 Va. 64, 66, 48 S. E. 508: 'The party who affirms negligence must establish it by proof sufficient to satisfy reasonable and well balanced minds. The evidence must show more than a probability of a negligent act. An inference cannot be drawn from a presumption, but must be founded upon some fact legally established. This court has repeatedly held that when liability depends upon carelessness or fault of a person, or his agents, the right of recovery depends upon the same

being shown by competent evidence, and is incumbent upon such a plaintiff to furnish evidence to show how and why the accident occurred—some fact or facts by which it can be determined by the jury, and not be left entirely to conjecture, guess or random judgment, upon mere supposition, without a single known fact.' "

There is no merit in the contention that the doctrine of *res ipsa loquitur* applies in this case. We have only a case of "an unexplained accident which may have been attributable to one of several causes, for some of which the defendant is not responsible." *Arnold v. Wood, supra.* The plaintiff is not entitled to recover upon mere peradventure. The evidence wholly fails to show any negligence of the defendants as the proximate cause of the injuries from which Huff died. It creates only a suspicion, and nothing more than a probability. No *prima facie* case having been made out, the trial court erred in refusing to sustain the motion of the defendants to strike the plaintiff's evidence.

Having reached this conclusion, it is unnecessary to discuss the remaining assignments of error.

For the reasons stated, the verdict of the jury will be set aside, the judgment of the trial court reversed, and a final judgment here entered for the defendants.

*Reversed and final judgment.*

BUCHANAN, J., dissenting.

I am unable to agree that the facts shown in evidence are not enough to present a jury question on the negligence of the defendant. The majority opinion holds that there was sufficient evidence to support the verdict on the point that Spears was the driver of the car that killed Huff. The body of Huff was two or three feet off the hard surface of the road. The spot of blood about six feet west of his feet was in the gravel off the hard surface. The scuffed place in the gravel, which looked as if it might have been made when the car knocked his feet from under him, was off the hard sur-

face. There were no marks or blood on the hard surface. These were proved facts from which the jury could make the legitimate inference that Huff was struck by the automobile of Spears when Huff was completely off the hard surface of the road. There was a sharp curve in the road at the point of the accident. It was downgrade as Spears was driving east around this curve. The shoulder on his right extended about six feet beyond the hard surface and sloped to the ditch line. The automobile made an arc to its right around the point where Huff's body was found. It had started off the hard surface around the curve. It was 105 feet from where it left the hard surface to where it stopped. It ran 45 feet of that distance with all four wheels on the slope of the bank and the right wheels almost to the top of the bank. Spears ran away from the scene of the accident and left his victim dying by the side of the road. Why? Not because it happened without fault on his part, as the jury concluded, and as they had a legal right to conclude, as it seems to me.

The driver of an automobile, operating his car with reasonable care, does not normally drive completely off the road, and run for 45 feet with all four wheels on the side of a bank, which impressed one witness as being all that kept Spears from turning over. Normally, a driver who runs over a man while operating his car with reasonable care does not leave him there to suffer or die. When he does so inhumanly and abnormally behave, and afterwards seeks to avoid the consequences by denying all knowledge of the matter, there is a strong inference that his conduct was caused by his consciousness of guilt. His flight was evidence of wrongdoing, to be weighed by the jury on the question of negligence, as the flight of one charged with a crime is to be considered by the jury on the question of guilt.

There is no presumption here, as the majority opinion holds, that there was any negligence on Huff's part that caused or contributed to his death. What, then, is the explanation? Only Spears can answer. Only he can explain the blood spot, the scuff marks, the position of Huff's body,

from which the jury could conclude that Huff was entirely off the hard surface of the road when Spears ran over him. Only Spears can explain how he was using reasonable care when he ran his car off the road for 105 feet and with all four wheels on the side of the bank for 45 feet of that distance, and ran over a man who was on the shoulder of the road. Only Spears can explain away his flight from the scene in some way consistent with the use of reasonable care on his part. To my mind these proved facts make a *prima facie* case of negligence sufficient to put upon Spears the duty of explanation. As a matter of logic and fairness, as well as a matter of public policy, very little should be required to support an inference of negligence and shift the burden of explanation when a man kills another with his automobile and he alone knows how it happened.

I do not understand that this conclusion would be at variance with the former holdings of this court on the subject. It does not involve a presumption contrary to known facts, as was said of the theory in *Arnold* v. *Wood*, cited in the majority opinion. It does not draw an inference from a presumption. The inference to be drawn is, as I see it, a reasonable inference from facts proved. It is true, no witness testified that Spears was negligent. It has never been held that such testimony is necessary. Many defendants have been put to death for crimes that no witness saw committed but of which only the circumstances gave evidence. To sustain this verdict would not result from inferring negligence from the fact that Huff was killed. This case does not, in my opinion, present a situation where the evidence, as the jury had a right to view it, is consistent equally with the existence or non-existence of negligence. It shows facts from which the jury properly determined that the burden of explanation shifted to Spears. His answer that he was not there, which the jury did not believe, and which the majority opinion says they were warranted in not believing, was not a sufficient answer. Not being true, it did not suffice to show that the accident was caused by the negli-

gence of Huff or to explain that it was not due to the negligence of Spears. If that is true, then the judgment on the verdict ought to be sustained.

HUDGINS, J., concurs in this dissent.