# Richmond.

HARLOW'S ADMINISTRATOR v. CHESAPEAKE & OHIO RY. CO.

November 19, 1908.

1. RAILROADS—*Licensees on Track—Prevision.*—A railroad company owes
no duty of prevision or previous preparation for the protection of
a bare licensee upon its track, or road bed.  He is only relieved from
the responsibility of being a trespasser, and takes upon himself all
ordinary risks attached to the place and the business carried on
there.

2. RAILROADS—*Licensees on Track—Defect of Passing Train—Repairs—
Ordinary Care.*—If it be assumed that the plaintiff's intestate was
killed while walking on defendant's right of way by the steps flying
off a passing passenger. train, the evidence shows that if the steps
were out of order. at the last stopping place before the accident, the
trouble was then and there remedied by the conductor in such man-
ner as to satisfy him that no danger to anyone was to be appre-
hended therefrom.  This was all that ordinary care required, and
hence there is no liability on the defendant.

Error to a judgment of the Circuit Court of Augusta county
in an action of trespass on the case.  Judgment for the defend-
ant.  Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Timberlake & Nelson* and *Chas. & Duncan Curry,* for the
plaintiff in error.

*Robert L. Parrish,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was brought to recover damages for the death of
the plaintiff's intestate, caused, as alleged, by the negligence of

the Chesapeake and Ohio Railway Company. A demurrer to the evidence by the defendant company was sustained, and judgment rendered in its favor. To that judgment this writ of error was awarded.

On the 9th of August, 1906, about 10 o'clock at night, the dead body of Albert F. Harlow, nineteen years of age, was found lying on the right of way of the defendant company a short distance beyond Augusta Springs, a station about twenty miles west of Staunton. The skull of deceased was crushed back of the left ear, and his neck broken. A short distance west of the point where the body was lying, a part of a set of passenger coach steps was found. Shortly before the body of the deceased was discovered, between half-past nine and ten o'clock, the through passenger train, limited, going west from Jersey City to Cincinnati, passed the point in question, running from thirty-five to forty miles an hour. It was a dark night and a slight rain falling. The theory of the plaintiff is that the deceased was walking from the Augusta Springs station, west, to his home, which was near the railroad, and that the steps of the car were loose, and negligently allowed to swing out from the side of the car; that these steps, thus swinging out, struck the deceased as the train passed and caused his death.

The record shows that the relation of the deceased to the defendant was that of a *bare licensee;* he, together with others, having used the right of way at that point as a walkway from their homes to the station, with the knowledge and acquiescence of the company.

It is properly conceded that a railroad company does not owe the duty of prevision or previous preparation for the protection of a bare licensee upon its track or road bed. *Williamson* v. *Southern Ry. Co.,* 104 Va., 146, 51 S. E. 195, 113 Am. St. Rep. 1032, 70 L. R. A. 1007.

A bare licensee is only relieved from the responsibility of being a trespasser, and takes upon himself all ordinary risks attached to the place and the business carried on there. *N. & W. Ry. Co.* v. *Wood,* 99 Va. 156, 37 S. E. 846.

It is, however, contended that the defendant company had actual knowledge that the steps in question were broken and loose when the train passed Staunton, Va., twenty miles east of the point where Harlow was killed, and that this notice was sufficient to put the defendant on its guard to use ordinary care to protect the deceased, and not to injure him at a point where he might reasonably be expected to be on its roadbed. In support of this contention, the evidence of three witnesses is relied on. The first is the testimony of Samuel Critzer, who says that when the train passed Basic City, a station thirteen miles east of Staunton, he saw something like a plank, or it might be steps, sticking out about two feet from the car. The second is the testimony of Tim Kennedy, who was on the platform at Staunton, and says that he did not notice that the steps stuck out from the coach, but that he saw the conductor shake them and kick them into position. The third is the evidence of John McCauley, who says that he was on the platform at Staunton and saw the step sticking out about one foot, and that the conductor kicked it back with his foot, and "stuck his hand inside the step like he was screwing up a bolt or something or other."

There is nothing in the testimony of the Basic City witness to bring home to the defendant the slightest knowledge that the steps were out of order. This was a dark night. As already stated, the train was a through passenger train going west from Jersey City to Cincinnati. It made but few stops—one at Charlottesville, a divisional point forty miles east of Staunton. The uncontradicted evidence is that the train was inspected at Charlottesville and everything reported to be in order. The evidence of the two Staunton witnesses is positively denied by the conductor and others, who testify that a number of persons alighted over the steps in question that night at the Staunton station. Placing the coach at the point where it is put by these two witnesses, it is difficult to understand how they could have seen what they claim through a high iron railing from the position in which they place themselves. Accepting, however, their evidence as true, we are of opinion that it fails to bring

home to the defendant company notice that the steps were suffi-
ciently out of order to be a menace to anyone who might be on
its right of way.  The result of the evidence of these two wit-
nesses is that if the steps were out of order at Staunton, the
trouble was remedied by the conductor before leaving Staunton
in such manner as to satisfy him that no danger to anyone was
to be apprehended therefrom.  This was all that an ordinarily
prudent man could do, and, therefore, no liability can attach
to the defendant for the death of the plaintiff's intestate, assum-
ing that he was killed by the steps while walking on the rail-
road right of way, which is not clear from the evidence.

The judgment of the circuit court, sustaining the demurrer
to the evidence, is without error and must be affirmed.

*Affirmed.*