# Staunton

## DAN INGLE, ADMINISTRATOR, ETC. V. CLINCHFIELD RAILROAD COMPANY.

September 23, 1937.

Present, All the Justices.

The opinion states the case.

*John K. McCoy* and *Wm. H. Werth,* for the plaintiff in error.

*J. J. McLaughlin* and *R. P. Bruce,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The plaintiff in the court below who is now the plaintiff in error, instituted his action at law against the Clinchfield Railroad Company for damages for the wrongful death of Louise Ingle, his infant daughter, who was killed on the railroad track by an engine of a freight train operated by the defendant. After all of the evidence had been concluded, the defendant demurred to the evidence, the court sustained the demurrer, and entered a judgment for the defendant.

The considerations to be entertained by the court and the principles of law controlling the decision upon a demurrer to the evidence have been so clearly and frequently stated by this court that we will not undertake to reiterate them.

The railroad company maintained a flag stop, named and designated as "Bangor," to receive and discharge passengers. Addie Ingle, the mother, accompanied by her three children, Louise, four years old, Burton, six years and Calvin, six months of age, intended to go by passenger train from Bangor to Johnson City, Tennessee, to visit her parents. In the morning they entered upon the right of way of the railroad company a considerable distance from Bangor and proceeded in a path which ran about four feet from the end of the ties along the side of the tracks. This path had been used for a long time by pedestrians going to Bangor to board the trains. The railroad company, through its agents, knew of such use. They proceeded along the path and the mother carried the youngest child in her arms, while the other two children were walking a short distance ahead of her. Louise was about 150 feet ahead of her mother.

Burton was between the mother and Louise. While they proceeded in this manner the mother heard the freight train approaching behind them. She testified that it was then between one-fourth and one-half a mile away. She said that it "was a long ways off." A sufficient distance intervened between the train and the mother and children for it to have been brought to a full stop before it reached them.

When the mother discovered the approaching train she called to Louise and told her to stop running, but she failed to heed. The mother then began to run with the baby in her arms after Louise but was unable to overtake her. For some unaccountable reason Louise turned to her right from the path towards the track and placed one foot on the rail and looked towards the train. She then attempted to get off of the track but before she could do so, she was struck by the engine and killed.

The freight train was composed of two engines and fifty-four cars. It was not scheduled to stop at Bangor. It was running down-grade at a speed of thirty-five miles per hour. Bangor was between 1,200 and 1,300 feet south of the point where the child was killed. That point is not in sight of Bangor. The distance to the rear of where Mrs. Ingle was walking from which the engine crew might have seen her and her children was estimated at from 1,000 to 1,500 feet.

The engineer's vision was obstructed by reason of a curve near the point of accident. A brakeman whose name is Honeycutt and a fireman on the second engine were looking in the direction of Mrs. Ingle and her children and could have seen them for 1,500 feet according to the testimony most favorable to the plaintiff. Mrs. Ingle did not know how far away the train was when Louise stepped upon the track. Honeycutt stated that Louise stepped upon the track when the train was within 100 feet of her. When she stepped upon the track the whistle was sounded, the emergency brakes were applied and the train was stopped, but too late.

In answer to this question, "You say she kept on running, how long did she keep that up?" Mrs. Ingle said that she

kept running until she got on the ties "and then the train hit her." Again she testified that "at the time the train hit her she was trying to get off the ties," that when she started to get on the track she could have seen the train. In answer to this question, "After she put her foot on the track it all happened * * * in the twinkling of an eye," Mrs. Ingle replied "Yes." She was asked if it "happened just that quick," to which she replied "Yes."

From the testimony of the plaintiff considered as a whole the conclusion is inescapable that when Louise stepped on the track the train was only a short distance away. It was too close to her for it to be stopped without striking her.

The evidence very clearly discloses that there was another safe way to the flag stop, other than the path used by Mrs. Ingle and her children, and that it was actually used that morning by Mr. Ingle and his other children.

The position of the plaintiff in error is that the railroad company through its agents should have anticipated the presence of the mother and children on its right of way at the place in question and should have given them timely warning of the approach of the train; that the pathway was habitually used by pedestrians to go to Bangor and the agents of the railroad company should have noticed the proximity of the plaintiff's decedent to the tracks and should have anticipated that children of that age are irresponsible and would not appreciate the danger of an approaching train. The plaintiff in error also contends that when the agents of the railroad company discovered the plaintiff's decedent in the path they should have reduced the speed of the train. He further contends that the presence of small children along the right of way of a railroad company is just as much of a danger signal to the operators of a train as their presence along a highway would be to the operator of a motor vehicle; that the principles controlling the operator of a motor vehicle along the highway where small children may be walking apply to the operators of a train when children may be walking in a path on the right of way; and that the railroad company through its agents is charged

with knowledge of the irresponsible propensities of small children.

In order to determine the duty, if any, which the railroad company owed Louise, we must determine her status just prior to her death. In no sense could she be regarded as a passenger. Nor do we think she was an invitee. The most that could be reasonably contended for her is that she was a licensee. The evidence fairly discloses that pedestrians used the pathway which was being used by the plaintiff's decedent at the time she was killed and that such use had continued over a sufficient period of time to charge the railroad company with notice of it.

From the evidence arises the reasonable inference that the railroad company only tolerated such use of its right of way by silent acquiescence. Pedestrians were not invitees. They had no invitation either express or implied to use the right of way but by their repeated acts of trespass over it they became licensees.

The rule in Virginia appears to be that a licensee goes upon the right of way of a railroad company at his own risk and enjoys the license subject to the perils arising there. No duty is imposed upon the railroad company to keep its premises in a safe condition for the use of licensees. It is only liable to a licensee for wilful and wanton injury which may be inflicted by the gross negligence of its agents and employees. *Nichols* v. *Washington, etc., R. Co.,* 83 Va. 99, 102, 5 S. E. 171, 5 Am. St. Rep. 257; *Hortenstein* v. *Virginia-Carolina R. Co.,* 102 Va. 914, 47 S. E. 996; *Norfolk & W. R. Co.* v. *Wood,* 99 Va. 156, 37 S. E. 846; *C. & O. R. Co.* v. *Bullington's Adm'r,* 135 Va. 307, 116 S. E. 237, 240; *Harlow's Adm'r* v. *C. & O. R. Co.,* 108 Va. 691, 62 S. E. 941; *Norfolk & W. R. Co.* v. *Stegall's Adm'x,* 105 Va. 538, 54 S. E. 19; *C. & O. R. Co.* v. *Palmer,* 149 Va. 560, 140 S. E. 831; *C. & O. R. Co.* v. *Saunders' Adm'r,* 116 Va. 826, 83 S. E. 374.

In *C. & O. R. Co.* v. *Bullington's Adm'r, supra,* the rule regarding licensees was stated thus:

"The instant case upon this point is controlled by the decision of this court in the case of *C. & O. Ry. Co.* v. *Saunders' Adm'r*, 116 Va. 826, 83 S. E. 374, wherein the law in this State was declared to be, as succinctly stated in the fifth and sixth headnotes thereto, as follows:

" '5.   *   *   *.—It is not the duty of a railroad company to have a lookout on its front car, or to make any previous preparation for the discovery of licensees on its track. A bare licensee is only relieved from the responsibility of being a trespasser, and takes upon himself all the ordinary risks attached to the place and the business carried on there.

" '6.   *   *   *.—A railroad company does not owe to a licensee the duty of running its train in a particular manner, or at a particular rate of speed, and is under no obligation to keep a lookout on its car, or ring its bell, or to blow its whistle, and the mere failure to do any or all of these things does not give him a right of action.' "

This court held in *Southern Ry. Co.* v. *Daves*, 108 Va. 378, 61 S. E. 748, 749, that where the engineer and fireman saw two children, 150 yards from a crossing, running rapidly in that direction and one of them was struck and injured, the railroad company was not liable. Harrison, J., speaking for the court said: "That a person approaching a railroad crossing will stop and not go upon the railroad track immediately in front of a moving engine in plain view, is a presumption that arises in the case of a child eight years old, running along the public road, as well as in the case of an adult, provided there is nothing in the situation to put a reasonably prudent man on his guard to use extraordinary care to avoid a collision. There must be something in the situation or appearance of things to suggest that the child is not going to stop, otherwise the failure of the engineer to stop the train is not negligence. In other words, the railroad company cannot be held liable for the failure of its engineer to anticipate that a person, whether infant or adult, approaching a crossing, is going to step upon the track immediately in front of a moving engine, unless there is something to suggest to the engineer that

such person does not intend to remain in a place of safety until the train has passed. If it were the duty of a railroad company to stop its trains whenever it saw children running in the direction of a public crossing, the public service would be reduced to a wholly inadequate degree of efficiency."

See also, *Norfolk & W. Ry. Co.* v. *Denny's Adm'r*, 106 Va. 383, 56 S. E. 321, and *Norfolk & W. Ry. Co.* v. *Johnson's Adm'r*, 103 Va. 787, 50 S. E. 268.

■ The whistle was not blown and the bell was not rung to warn Mrs. Ingle of the approach of the train. If there was a duty upon the agents of the railroad company to blow the whistle or ring the bell to warn pedestrians walking along the side of the track, we do not think such warning was necessary in this case because Mrs. Ingle and the plaintiff's decedent knew of the approach of the train when it was a "long way off" for they had heard it. Therefore, a warning by whistle or bell would have given them no better notice of the danger of an approaching train than they already had.

■ Mrs. Ingle, in so far as the agents of the railroad company were concerned, had the apparent custody and control of Louise. When they could first have been seen, they were in a line moving down the path, Louise in front, another child following her and Mrs. Ingle in the rear. If the trainmen had actually discovered the mother and her children when they were yet 1,500 feet away, there was no way whereby they could discern that Louise was 150 feet ahead of her mother or that she would turn upon the track too close to the train.

Cases holding that the operators of a train must take notice of an unattended small child on the right of way and anticipate that from childish impulses it may run in front of the train, are not in point. That situation is not presented in the case at bar for Louise was attended by her mother.

Mrs. Ingle, because of her superior knowledge of the propensities and habits of her children was in a better posi-

tion to judge whether they were in danger when walking on the path beside the tracks than anyone else. She must have thought that they were in a safe place or else she would not have placed them there. If she saw no peril in taking them down the pathway which was four feet from the end of the ties, it would be demanding too much of the railroad company to require that it should have, through its agents, foreseen peril in the situation. If Louise had remained in the path she would not have been struck. The space to her left was level and afforded an opportunity for her to have moved much farther from the track. While she was under the control of her mother, the mother knew the train was approaching.

There was no conduct on the part of Louise which indicated to the trainmen that she would leave the path, a place of safety, and go upon the track, until the train was approaching so close it could not be stopped without striking her. Her peril did not arise until she started to the track, and then the operators of the train blew the whistle and applied the emergency brakes and did all that they could to save her, but it was too late to avoid striking her.

The principles controlling the operation of motor vehicles upon a public highway where children may be, have no application when we consider the operation of trains by a railroad company upon its own tracks when children may be upon the right of way. Counsel for the defendant in their brief have enumerated some of the many differences between operating trains and operating motor vehicles upon a public highway. Railroads in order to properly serve the public must operate their trains with speed and upon schedules; they are engaged in carrying freight, mail and passengers over the private tracks of the company. Automobiles are not operated in such manner or for such purpose. Railroads are entitled to the exclusive use of their tracks, and it is a violation of Code, section 4469, for one to be on its track without the consent of the company. Automobiles upon a highway are not entitled to their exclusive use. They have only equal rights therein with

others. There are many regulations which apply to automobiles that have no application to trains. Railroad tracks are a proclamation of danger. Highways are not. Long trains are not easily and safely stopped in a short distance. Not so with automobiles being driven at lawful rates of speed. Many other differences might be pointed out, but the foregoing suffices to show that laws regarding the operation of automobiles have no application to the operation of trains.

The doctrine of the last clear chance has no application for the evidence clearly shows that the trainmen did all that was reasonably possible to save the child after they saw her leave the path and go on the track. After her peril arose nothing could be done.

Our opinion is that in no proper view of the case can the plaintiff in error sustain a recovery. The trial court properly sustained the demurrer to the evidence. The judgment is affirmed.

*Affirmed.*