PRESENT: All the Justices

TABITHA LASLEY, A MINOR,                          OPINION BY
BY JUANITA LASLEY, HER NEXT FRIEND,      JUSTICE WILLIAM C. MIMS
ET AL.                                          October 31, 2014

v.  Record No. 132048

DANIEL HYLTON

            FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
                      Larry B. Kirksey, Judge

     In this appeal, we consider the legal duty that a host owes

to a child social guest when the child's parent is present and

supervising the child.

            I.  BACKGROUND AND MATERIAL PROCEEDINGS BELOW

     Over Labor Day weekend of 2008, Daniel Hylton ("Hylton")

hosted a cookout for friends and neighbors at his property in

Botetourt County, Virginia.  Among his guests were Gene Moseley

("Moseley") and his two daughters, eight-year old Tabitha Lasley

("Tabitha") and twelve-year old Casey Lasley ("Casey").

Although Hylton and Moseley were well-acquainted, Hylton had

never met Tabitha or Casey.

     When they arrived, Casey and Tabitha saw a teenage boy

riding a green all-terrain vehicle ("ATV").  Neither girl had

ridden an ATV before.  With Moseley's permission, Tabitha

accepted a ride on the back of the green ATV.  Thereafter,

either Hylton asked Casey if she would like to drive an ATV, or

Casey asked Hylton for permission to do so.

Hylton owned two ATVs — the green ATV and a smaller, red ATV. Prominent safety warnings were stickered to the seat and body of the red ATV, including one that read: "<u>NEVER</u> permit children under age <u>12</u> to operate this ATV." The owner's manual contained additional warnings, including one that stated: "The minimum recommended age for this ATV model is 12. Children under age 12 should never operate an ATV with engine size 70cc or greater." The red ATV had an engine size of approximately 86cc. Despite these warnings, Hylton routinely permitted neighborhood children to drive the red ATV provided they received permission from their parents and wore a helmet and shoes.

Hylton and Moseley set Casey up on the red ATV. Hylton explained the controls; then Casey drove across the property. While watching her older sister, eight-year old Tabitha asked Hylton if she could drive the ATV as well. Hylton told her that she had to get her father's permission first. When Tabitha asked Moseley for permission to drive the red ATV, he agreed. Moseley called Casey back so that Tabitha could take a turn. Casey had difficulty bringing the ATV to a stop and actually struck Moseley in the process.

Tabitha put on the helmet with help from another adult, and Moseley helped Tabitha onto the ATV. As the engine was running, Hylton explained where the gas pedal, clutch, and brakes were

2

located.  Then Tabitha accelerated, reaching an estimated speed of five to ten miles per hour.  Almost immediately, she lost control and began to swerve.  Moseley yelled for Tabitha to stop, but before she could do so, she tipped the ATV and was thrown to the ground.  Tabitha sustained multiple injuries, including a fractured shoulder.

Tabitha, by her mother, Juanita Lasley, and Juanita Lasley in her own right (collectively "Lasley"), filed an amended complaint in the Circuit Court of Botetourt County.  The complaint alleged that Hylton had been negligent and grossly negligent by allowing and assisting Tabitha to operate the ATV, failing to advise Moseley and Tabitha of the warnings displayed on the ATV, and failing to heed those warnings.

At trial, Hylton testified that he relied on Moseley, as Tabitha's parent, to decide whether she could safely drive the ATV.  Moseley never asked Hylton, and Hylton never agreed, to supervise the girls.  In fact, Moseley was present and assisted both girls while they rode.  Hylton also testified that he knew Tabitha was about eight years old and that he never asked whether she had driven an ATV before.  Hylton acknowledged that he never discussed the warnings displayed on the ATV or the risks of driving an ATV with Moseley or Tabitha.

At the conclusion of Lasley's case, Hylton moved to strike the evidence.  The circuit court, relying on Ingle v.

3

Clinchfield Railroad Co., 169 Va. 131, 192 S.E. 782 (1937), granted Hylton's motion and entered judgment in his favor.[1] The court reasoned that in the absence of evidence of a special relationship or evidence that Hylton assumed a duty to supervise Tabitha, he had no duty to Tabitha that could support a finding of negligence:

> It is clear that Tabitha Lasley was under the supervision of her father at the time this took place and that's not disputed. It is clear that the Defendant inquired of the supervising parent with regard to the activity that was requested. It is clear and not disputed that the supervising parent gave his permission. I think it's clear under Virginia [l]aw that if a child is supervised by a parent and that the parent sees no peril in the child's activity, that it would be demanding too much of the Defendant to foresee the peril in the situation.

Lasley assigns error to the circuit court's ruling that Hylton, as a matter of law, did not have a duty to prevent Tabitha from riding the ATV. Lasley also assigns error to the circuit court's reliance on Ingle, asserting that it is distinguishable on its facts.

## II. DISCUSSION

### A. The General Duty of a Host to Social Guests

We review the trial court's rulings de novo, as "[t]he issue whether a legal duty in tort exists is a pure question of

---

[1] The circuit court did not make a separate finding regarding whether the facts supported a claim for gross negligence, apparently concluding that only simple negligence was implicated.

law."  Kellermann v. McDonough, 278 Va. 478, 487, 684 S.E.2d 786, 790 (2009).

As an initial matter, the parties do not dispute that Tabitha and her family were Hylton's social guests at the cookout.  Virginia law imposes a duty upon a host to conduct his or her activities with reasonable care under the circumstances. Bradshaw v. Minter, 206 Va. 450, 453, 143 S.E.2d 827, 829 (1965).  Bradshaw is instructive though distinguishable, as explained in Part II.D.

In Bradshaw, the host permitted his guest to ride one of his horses, which he knew was "spirited" and "liked to run." Id. at 451-52, 143 S.E.2d at 828.  He had no knowledge of his guest's riding experience, and he failed to adequately disclose the horse's propensities to her.  Almost immediately, the horse threw the guest to the ground, causing her injuries.  Id. This Court held that "[w]here the activities of the host are involved, the test should be one of reasonable care under the circumstances."  Id. at 453, 143 S.E.2d at 829.  However, a host is not subject to liability if the guest knew or should have known of the host's activities and any accompanying risk.  Id. Consequently, as a general rule a host has a duty to social guests for his or her activities.  But when the risk is open and obvious, as Hylton asserts in the present case, the host is not liable.  See Smith v. Lamar, 212 Va. 820, 823, 188 S.E.2d 72, 74

5

(1972) (quoting <u>Perlin v. Chappell</u>, 198 Va. 861, 864, 96 S.E.2d 805, 808 (1957)) ("'Reasonable care' or 'ordinary care' is a relative term, and varies with the nature and character of the situation to which it is applied. . . . The test is that degree of care which an ordinary prudent person would exercise under the same or similar circumstances to avoid injury to another.'")

B. The Host's Specific Duty to a Child Who Is Supervised by a Parent

Before we reach the question of whether the ATV constituted an open and obvious risk, the facts of this case present an issue of first impression for this Court. We have never articulated the duty that a host owes to a child social guest when the parent is present and supervising.

The parties do not dispute that Tabitha's father, Moseley, was present and supervising her activities. Lasley urges us to find that this fact is irrelevant, arguing that Moseley's presence did not circumscribe Hylton's duty to Tabitha to conduct his activities with reasonable care. In effect, Lasley argues that Hylton had an absolute duty to prohibit Tabitha from driving the ATV or at least to discuss the danger with Moseley before she did. We disagree.

In <u>Ingle</u>, the Court held that the operators of a train had no legal duty to a child accompanied by, and under the supervision of, her mother. 169 Va. at 139-40, 192 S.E. at 785-

6

86. In that case, a mother and her three children were walking along a path parallel to, and approximately four feet from, the end of the rail ties underlying the tracks. The path was in the railroad company's right-of-way, and pedestrians made sufficient use of it to charge the company with notice of its use. Consequently, the Court concluded that the mother and her children were the railroad's licensees. The evidence showed that the daughter was walking about 150 feet in front of her mother; the mother heard the train approaching; and the mother called to the daughter to stop. Inexplicably, the daughter stepped onto the ties and was struck by the train. Id. at 134-37, 192 S.E. at 783-84.

The Court noted that cases holding that train operators "must take notice of an unattended small child on the right of way and anticipate that from childish impulses it may run in front of the train" were inapposite, because the daughter "was attended by her mother." Id. at 139, 192 S.E. at 785. The Court reasoned that if the mother "saw no peril in taking them down the pathway which was four feet from the end of the ties, it would be demanding too much of the railroad company to require that it should have . . . foreseen peril in the situation." Id. at 140, 192 S.E. 785-86.

Ingle alone does not control the outcome of this case though, for reasons asserted by Lasley on brief: Hylton's

7

"active and direct commission of negligence . . . placed Tabitha in peril." Under the rule in Bradshaw, Hylton had a duty to his guests to exercise reasonable care while carrying on his activities. Consequently, we must determine under what circumstances a host is liable for harm to a child social guest, when that harm is attributable to his alleged active negligence and the child's parent is present and supervising.

C. Case Law from Other States

Virginia recognizes that a parent has a general duty to supervise and care for a child's safety though, as noted, we have yet to reconcile it with the duties of a social host. See Chapman v. City of Virginia Beach, 252 Va. 186, 193, 475 S.E.2d 798, 803 (1996) ("A parent has a duty to exercise ordinary care for the child's safety . . . ."). Although this is a question of first impression in Virginia, other courts have considered it and ruled that the parent's duty is superior to the duty of a social host when the parent is supervising and knows or should know of an obvious danger.

Two decisions that are particularly instructive, due to their factual similarity with the present case, are Vares v. Vares, 571 S.E.2d 612 (N.C. Ct. App. 2002) and Kay v. Ludwick, 230 N.E.2d 494 (Ill. App. Ct. 1967). In Vares, the host invited his extended family to his home for a regular family gathering, known as "Farm Day," during which the family members performed

8

various chores intended to maintain the fifty-acre property. Vares was assigned the task of cutting down a tree. Initially, he permitted his son to help clear some brush. Then, Vares directed his son to stand back before he and two other men felled the tree. Nonetheless, the child moved into the path of the falling tree, which struck and injured him. Vares, 571 S.E.2d at 614.

The court began by noting that a landowner has a general "duty to exercise ordinary care for the protection of one of tender years, after his presence in a dangerous situation is or should have been known." Id. at 616 (citations and internal quotation marks omitted). However, the court also noted that this duty does not apply when "the minor child is being actively supervised by a parent who has full knowledge of the condition of the premises and appreciation of the danger thereby presented." Id. Because Vares was present and supervising the child when he was injured, the court concluded that the duty of care "belonged to Vares" and not to the host. Id.

In Kay, a four-year old girl and her mother were guests at Ludwick's home. During their visit, Ludwick permitted someone to mow her lawn with a "riding-type rotary power mower" as the child played outside. The child attempted to climb onto the rear of the mower, and her foot fell into the path of the blade, which severed her heel. The mother and child alleged that

9

Ludwick was negligent in permitting the mower to be operated while the child played outside, failing to warn the child, and failing to supervise or protect the child. Kay, 230 N.E.2d at 496. The court rejected their arguments, concluding that "[t]he primary responsibility for the safety of this minor child rested with its mother" who was present and apparently supervising the child. Id. at 497. The court noted that the mother "observed no apparent harm in permitting her child to play in the yard while the mower was in operation" and to require more from the host would be to impose "a duty superior to the one the parent here owed to the child." Id. at 497-98.

D. The ATV Presented Open and Obvious Risks

The fact that Moseley was present and actively supervising Tabitha is not in dispute. The evidence adduced at trial also demonstrated that the danger to Tabitha was open and obvious. Moseley therefore knew or should have known of the risk of injury.

In Bradshaw, the guest had no way of knowing about the horse's "spirit" or propensity to run unless the host disclosed those risks. 206 Va. at 452, 143 S.E.2d at 828. Consequently, the Court concluded that it was for the jury to determine whether the host was negligent in permitting the guest to ride without informing her of the horse's characteristics. Id. at 455, 143 S.E.2d at 830.

10

Here, however, Moseley had ample opportunity to observe the variety of warnings clearly affixed to the ATV. There were four warnings on the ATV itself: one on the visible, top side of the left-front wheel well; one on the visible, top side of the right-front wheel well; one on the visible, top side of the left-rear wheel well; and one on the passenger seat. One explicitly warned against allowing children under 12 to operate the ATV. Furthermore, Moseley witnessed firsthand that his twelve-year old daughter had difficulty controlling the ATV, as she struck him while attempting to stop. Moseley had every right and opportunity to refuse to give eight-year old Tabitha permission to ride the ATV. He had every reason to know of the risks involved.

The prominently displayed warnings, which were pertinent to the very circumstances that increased the likelihood of Tabitha's injury, distinguish this case from those where we have held that the question of whether a danger is open and obvious is for the jury. See, e.g., Volpe v. City of Lexington, 281 Va. 630, 638-39, 708 S.E.2d 824, 828 (2011) (holding that a jury should decide whether an artificial "hydraulic" created by a low-head dam was open and obvious). Where the danger is open and obvious, the law places the "primary duty to inform, advise, and protect a child" on the child's parents. Washabaugh v.

11

<u>Northern Va. Construction Co.</u>, 187 Va. 767, 773, 48 S.E.2d 276, 279 (1948).

Lasley, relying on <u>Evans v. Evans</u>, 280 Va. 76, 695 S.E.2d 173 (2010), contends that a rule subordinating a host's duty under these circumstances effectively imputes the negligence of the parent to the child. Her reliance on <u>Evans</u> is unavailing, since that case merely states a narrow exception to the intra-family immunity rule, whereby a child has the right to recover from a negligent parent for a motor vehicle accident. See <u>id.</u> at 78 n.1, 695 S.E.2d at 174 n.1. Whether an ATV could be considered a motor vehicle is a question that is not presented in this case.[2]

Finally, we note that this rule is consistent with social norms. When a person invites neighbors, friends, or family to his or her home, that person does not expect to stand in loco parentis to child guests that accompany their parents. Rather, that person justifiably should expect his or her guests to exercise the same care and responsibility towards their children as they would in their own home. An invitation to a social

---

[2] Further, this rule does not mean that a host does not owe a duty to a child social guest. If it is reasonably foreseeable that the parent will not or cannot realize the risks involved with a host's activity, then the host's duty would remain to conduct activities with reasonable care for the benefit of child social guests. Similarly, if the host is supervising the child, then the host would also have such a duty.

event is not an invitation to relinquish parental responsibility.

### III. CONCLUSION

For the reasons stated, we confirm that a host owes a child social guest a legal duty to exercise reasonable care for the child's safety. We also conclude that Hylton satisfied this duty when he ensured that Tabitha was being supervised by Moseley and had his permission to ride the ATV.

We hold that if a child's parent is present and supervising, and knows or should know of open and obvious risks associated with an activity, a host does not breach the duty of reasonable care when he or she allows the child to participate in an activity with the parent's permission. Therefore, we affirm the judgment of the circuit court.[3]

Affirmed.

JUSTICE McCLANAHAN, with whom JUSTICE LEMONS and JUSTICE GOODWYN join, concurring.

Today, the Court in RGR, LLC v. Settle, ___ Va. ___, ___ S.E.2d ___ (2014)(this day decided), espouses a general maxim of legal duty owed by possessors of property to the entire world.

---

[3] Below Hylton raised the recreational use immunity statute, Code § 29.1-509, as a defense. Lasley argued on brief that the statute did not apply to the facts of this case. However, since the circuit court did not rule on the argument below, we do not consider it.

However, in this case in which Lasley requests application of a general maxim as the legal duty and expressly disavows reliance on a specific duty owed by possessors of land to social guests, the majority ignores the general maxim and fails to explain why it does not apply in this case. Instead it creates a new specific duty for possessors of land. Although I believe it worthwhile to note this inconsistent application and adoption of new legal theories, fortunately, it is not necessary for me to address it in resolving this matter because I would affirm the circuit court's judgment for different reasons.

Lasley did not assert that Hylton violated the duty owed by a host to a social guest. Lasley's claim was unrelated to Tabitha's status as a social guest on Hylton's premises. Instead, Lasley contended that Hylton violated a general duty not to injure Tabitha. See RGR, ___ Va. at ___, ___ S.E.2d at ___ (every person has a duty of ordinary care in the use and maintenance of their property to prevent injury or death to others). Because Lasley failed to assert the breach of any duty owed by Hylton to Tabitha recognized under our tort law prior to the RGR decision, I would hold that the circuit court did not err in granting Hylton's motion to strike.

In the circuit court, Lasley asserted that Hylton breached two separate duties to Tabitha. First, citing Kellermann v.

14

McDonough, 278 Va. 478, 684 S.E.2d 786 (2009), Lasley claimed that the duty of parental supervision shifted from Mosely to Hylton such that Hylton became responsible for Tabitha's care. Second, Lasley contended that even if the duty of supervision did not shift to Hylton, Hylton owed an independent duty to use ordinary care not to harm another person. Lasley maintained, prior to trial, that her cause of action was not based on the duty owed by Hylton to a social guest on his premises.[1]

At trial, Hylton moved to strike Lasley's evidence on the grounds that the evidence did not establish Hylton owed a duty to Tabitha absent a shifting of the parental duty of supervision or the existence of a relationship between Hylton and Tabitha. In response, Lasley argued that Hylton "did in fact take on that supervisory role," but if the court found he did not "assume

---

[1] In fact, Lasley's original complaint, as well as her first amended complaint, included a count against Hylton based on his status as property owner and host, in which she alleged that Hylton owed duties to his social guests to have his premises in a reasonably safe condition for his guests' use, to warn his social guests of unsafe conditions about which he knew or should have known, and to use ordinary care not to injure his social guests by his affirmative negligence. After Hylton filed a demurrer based, in part, on the recreational use immunity statute, Code § 29.1-509, Lasley responded that "[t]he facts on whose land this incident took place [are] irrelevant to [Lasley's] case and the allegations contained in the Complaint," and "[t]his incident could have occurred at a park, on a public road, school yard, or in the neighbor's front yard, and [Lasley's] basic causes of action would be nearly identical." Thereafter, Lasley filed her second amended complaint in which she did not include the count against Hylton based on his duty to social guests.

15

that responsibility, there is an independent duty on his part not to do anything to contribute to putting someone else in danger."  According to Lasley, her claim was based on Hylton's "failure to comply with his duty to use ordinary care to protect her."  Thus, in responding to the motion to strike, Lasley did not assert a duty owed by Hylton to social guests on his premises.[2]

On appeal, Lasley has continued to renounce any reliance on a theory of negligence based on Hylton's relationship to Tabitha as a social guest on his premises.  Specifically, on brief, Lasley maintains that her cause of action does not pertain to her status as a social guest on Hylton's premises.  Additionally, Lasley has abandoned her claim based on a violation of the duty to supervise Tabitha.  She argues only that Hylton owed "a general duty not to injure others negligently."  In distinguishing Ingle v. Clinchfield Railroad Co., 169 Va. 131, 192 S.E. 782 (1937), Lasley asserts that Tabitha's "status as a licensee or invitee is irrelevant" to her claim.  Furthermore, arguing that the recreational use immunity statute is not applicable, Lasley states that her claim does not concern the ownership or use of land because "[t]his ATV wreck

---

[2] Lasley also did not assert a duty based on a theory of negligent entrustment.  See, e.g., Kingrey v. Hill, 245 Va. 76, 78, 425 S.E.2d 798, 799 (1993).

16

could have occurred on a road, at a park, on a public road, school yard, or in the neighbor's front yard, and [Lasley's] causes of action would be identical."[3]

At oral argument, Lasley expressly disavowed reliance on the relationship between Hylton and Tabitha as host and social guest as the basis for the duty supporting her claim. Indeed, when pressed to acknowledge this relationship, Lasley answered that her claim did not have anything to do with the ownership of the land or the duty owed to a licensee or invitee, but was based entirely on Hylton's ownership of the ATV and his action in allowing her to ride it.

Despite Lasley's repeated assertions that her claim is not based on the duty owed by Hylton to a social guest on his premises, the majority undertakes to specifically determine what duty a host owes to a child social guest on his land when the child's parent is present and supervising. The majority begins its analysis with Bradshaw v. Minter, 206 Va. 450, 143 S.E.2d 827 (1965), in which the Court discussed the duty owed by a landowner to a licensee, which includes a social guest, on the owner's premises. While the Court in Bradshaw reiterated that a possessor of land generally owes no duty to a social guest to

---

[3] The recreational use immunity statute applies not only to conditions on the premises but to activities upon the premises as well. Code § 29.1-509(B).

17

keep the premises in a reasonably safe condition, the Court recognized a duty of reasonable care where the guest is injured by the landowner's affirmative negligence.  Id. at 452-53, 143 S.E.2d at 828-29.  The majority adopts this theory as the basis for Lasley's claim, and in doing so, addresses a claim Lasley has not in fact asserted.[4]

In sum, I would hold the circuit court did not err in granting Hylton's motion to strike because Lasley failed to assert any duty owed to Tabitha recognized under Virginia tort law.[5]  In the circuit court and in this Court, Lasley has asserted that her claim is based on a general duty not to injure others negligently without specifying a specific duty arising out of Lasley's relationship with Tabitha, either as her host or otherwise.  Therefore, the majority has addressed a claim that Lasley has not asserted and, indeed, has expressly disavowed.  In my view, the Court should await the arrival of a case in which the appellant actually asserts the breach of a duty owed by a landowner to a child social guest on the premises to define

---

[4] As noted previously, in her original and first amended complaints, Lasley asserted a claim based on her status as social guest on Hylton's premises and alleged Hylton owed a duty to use ordinary care not to injure his social guests by his affirmative negligence.  However, she did not include this claim in her second amended complaint.

[5] Although Lasley asserted her claim was based in part on the duty of supervision, which the circuit court ruled was not supported by the evidence, she has not asserted this duty on appeal.

18

the scope of the duty.  See Commonwealth v. Harley, 256 Va. 216, 219-20, 504 S.E.2d 852, 854 (1998).

For these reasons I concur only in the Court's judgment, affirming the circuit court's dismissal of the claim in this case.